MICHAEL DAVID ASSOCIATES, INC., Plaintiff-Appellee, v. GTE NET-
WORK SYSTEMS, INC., Defendant-Appellant.

First District (5th Division)   No. 1—88—1043

Opinion filed April 7, 1989.

Ralph E. Brown and Robert S. Hirschhorn, both of Walsh, Case, Coale & Brown, of Chicago, for appellant.

Herbert V. Adams III, of Chicago, for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant, GTE Network Systems, Inc. (GTE) (now GTE Communications Systems Corporation), appeals from a judgment of $9,000 entered by the trial court in favor of plaintiff, Michael David Associates, Inc. (David Associates), after a bench trial on an alleged breach of a contract action. David Associates is a licensed employment agency and GTE is a corporation engaged in the communications business. In May 1985, David Associates filed a breach of contract action which was later amended. The complaint alleged that on July 2, 1984, plaintiff's employee, Paul Holzer, orally agreed with GTE's employee, Steve Slonkowski, that David Associates would find and place a software design engineer with GTE for a fee of $9,000. It was further alleged that after the agency found and placed such a person, Michael Rinehart, GTE refused to pay the agreed-upon fee.

A bench trial followed in March 1988 at which Holzer was the only witness. Holzer testified that he was an employment counselor at David Associates specializing in the electronics industry. He stated that he periodically contacted GTE to solicit requirements for engineering personnel and that on July 2, 1984, he called and spoke with Steve Slonkowski at GTE. (At trial, GTE asserted that Slonkowski no longer worked for it.) Holzer was not certain of Slonkowski's title but believed he was a senior interviewer or engineering interviewer.

Holzer asked Slonkowski what open requirements he had for engineering personnel. Slonkowski responded by requesting an engineer technician who could perform specific functions and informed Holzer that the pay range would be $36,000 to $42,000. The two men agreed to a 25% fee arrangement.

During the conversation, Holzer wrote the information down. He stated that he filled a job order form, which was admitted into evidence. He then proceeded to search for possible applicants and was given the name of Mike Rinehart. Holzer called Rinehart at his job on July 5, and after Rinehart expressed interest in the GTE position, arrangements were made for Holzer to call him at home that evening. In the evening phone call, Holzer obtained more details regarding Rinehart's skills and qualifications and gave him more specific details of GTE's job description, after which Rinehart said that he was available for an interview with GTE.

Holzer then called Slonkowski the next day (July 6) and informed him about Rinehart. Slonkowski asked for Rinehart's resume, which Holzer did not have since he had just recruited Rinehart. In its stead, Holzer sent a copy of his notes on Rinehart's qualifications and background to Slonkowski on July 9, along with the resumes of two other people the agency had on file. At that time, Holzer filled out a "send out" slip on Rinehart and placed it in agency files. Between July 9 and 17, Holzer was in almost daily contact with Rinehart, who kept asking when an interview with GTE would be scheduled. Holzer stated that he called Slonkowski daily but his calls were refused. On July 20, Rinehart became angry with Holzer over the lack of an interview, whereupon Holzer suggested that maybe Rinehart could do better and gave him Slonkowski's name and telephone number.

On August 3, Holzer was finally able to reach Slonkowski and was told that GTE was going to make Rinehart an offer. When Holzer said that the applicant was his (Holzer's) candidate, Slonkowski denied receiving the notes on Rinehart but admitted receiving another person's resume sent in the same package. Slonkowski also told Holzer that he had gotten Rinehart's name from another agency but later recanted this statement and hung up. Holzer then called Rinehart at home that evening and was told that Rinehart had gone to a "tech fair" and contacted GTE there, after which Rinehart hung up.

In ruling in David Associates' favor, the trial court found that there was a contract between the employment agency and GTE. The court noted that GTE presented no evidence or witnesses to rebut Holzer's testimony and that Rinehart, although present in the courtroom during trial, did not testify, which fact caused the court to infer

that his testimony would be adverse to his employer, GTE.

On appeal, GTE contends that (1) the evidence did not show that GTE breached an alleged contract where David Associates did not demonstrate that it was the motivating force in Rinehart's hiring; (2) David Associates is entitled to no recovery because it did not comply with certain statutory requirements governing employment agencies; and (3) the trial court's presumption regarding Rinehart's failure to testify was error.

We affirm the judgment in favor of David Associates for the following reasons.

■■ GTE argues that David Associates had not performed all of its obligations under the purported contract and, thus, there could have been no breach by GTE. It relies on the "motivating force" factor discussed in *Polytechnical Consultants, Inc. v. All-Steel, Inc.* (1985), 134 Ill. App. 3d 187, in determining whether an employment agency is entitled to a fee. The criteria are "(1) the agency must have discussed the applicant with the employer; (2) the employer has agreed to interview the applicant; (3) the applicant has agreed to interview with the employer; and (4) the agency or the employer must have set the arrangements in motion for the interview." (134 Ill. App. 3d at 191, quoting *Snedden v. General Radiator Division of Chromalloy American Corp.* (1982), 111 Ill. App. 3d 128, 130.) GTE claims that criteria (2) and (4) were not fulfilled.

■■ The *Polytechnical* case involved an action between two employment agencies to determine which agency was entitled to the fee for a hired applicant. That is not the situation in the present case; rather, the issue is whether there was a contract and a breach thereof. There was clearly an offer and acceptance here. "An employment agency's business is to put a prospective employee in touch with a prospective employer, and the agency's services end once the two principals are made aware of each other's identities so that negotiations can be commenced between them." (*Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 970.) This is exactly what occurred in our case. The *Cook* description was utilized in discussing whether a contract had been made in Illinois so as to subject an out-of-State employer to long-arm jurisdiction. But, it is just as applicable to the present case as to whether a contract was formed.

■■ Furthermore, telephone negotiations and interviews are acceptable in employment agency cases according to the *Polytechnical* and *Cook* decisions. In the present case, David Associates offered to find an applicant for GTE and a fee (25%) was agreed upon after tele-

phone negotiations. A contract was formed and David Associates performed when it located Rinehart, interviewed him by telephone, filled out a job order form, and sent the relevant information regarding the applicant's qualifications to GTE. GTE subsequently hired Rinehart after Holzer had given him Slonkowski's name and telephone number. GTE cannot now claim that the agency did not perform when it was GTE's conduct that prevented Holzer from scheduling an interview for the applicant.

■ GTE's assertions that David Associates cannot recover because it did not comply with the provisions of "An Act to revise the law in relation to private employment agencies ***" (Illinois Private Employment Agency Act) (Ill. Rev. Stat. 1985, ch. 111, par. 901 *et seq.*) are without merit. Specifically, GTE claims that the Act was violated because David Associates did not conduct a face-to-face interview with Rinehart and did not mail out a referral slip by the close of the same business day as the telephone call. Section 5 of the Act states in part that "[n]o person shall be sent out for a job or to interview a prospective employer unless he has been personally interviewed by the agency *or has corresponded with the agency with the purpose of securing employment.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 111, par. 905.) We agree with the trial court that the many telephone conversations between Holzer and Rinehart satisfied at least the correspondence requirement of section 5. And, as mentioned above, telephone interviews are permissible. See, *e.g., Polytechnical Consultants, Inc. v. All-Steel, Inc.* (1985), 134 Ill. App. 3d 187.

Section 5 also requires a referral slip to be sent out to the applicant and the employer on the same day an applicant is sent for a job interview. However, since GTE cut off communication with David Associates as soon as it received information concerning Rinehart, the agency was unable to schedule an interview and is now estopped from insisting on the referral requirement. In any event, GTE admits that it was sent a "referral slip" on July 9, but argues that it should have been sent one on July 6, when Slonkowski requested background information on Rinehart. The language of the Act is clear in that the referral slip is necessary when a prospective employer and job applicant have been scheduled for an interview. David Associates was forestalled from accomplishing this by GTE's actions. As a result, the agency did not violate the Act and is entitled to recover its fee.

■ We must also dismiss GTE's final contention that it was error for the trial court to presume that Rinehart's testimony, if he had testified, would have been adverse to GTE. Such a presumption is permissible where a witness is accessible to a party and is not called.

(*Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042.) GTE claims the rule does not apply in this case because David Associates did not present a *prima facie* case and because Rinehart's testimony would have been merely cumulative.

■ However, a *prima facie* case was established by Holzer's testimony and documents, which demonstrated an offer, acceptance, consideration, the terms of the agreement, performance, defendant's breach, and damages. (See *Vandevier v. Mulay Plastics, Inc.* (1985), 135 Ill. App. 3d 787.) The burden then shifted to GTE to disprove Holzer's testimony. GTE presented no evidence. Furthermore, we do not know what Rinehart's testimony would have been. He certainly could have enlightened the court as to the assertion that Rinehart made contact with GTE at a "tech fair," and also could have disputed or confirmed those portions of Holzer's testimony regarding their telephone conversations, *e.g.*, whether Holzer gave Rinehart the name and telephone number of Slonkowski. Therefore, the trial court properly considered the fact that Rinehart did not testify.

For the above reasons, we affirm the trial court's entry of judgment for $9,000 in favor of plaintiff, David Associates.

Affirmed.

PINCHAM and COCCIA, JJ., concur.