MARY JANE CLARK, d/b/a Management Professional Specialists International, Plaintiff-Appellee, *v.* GENERAL FOODS CORPORATION, Defendant-Appellant.

Third District   No. 79-279

Opinion filed February 7, 1980.

Douglas L. Ziech, of Murphy, Timm, Lennon, Spesia & Ayers, of Joliet, for appellant.

Thomas A. Dunn, of Dunn, Leinenweber & Dunn, of Joliet, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant General Foods Corporation appeals from a judgment in favor of plaintiff Mary Jane Clark, d/b/a Management Professional Specialists International, for services rendered in her action based upon an oral contract. Ms. Clark's employment firm supplied General Foods with the resume of a job applicant who was subsequently hired by General Foods. The court, in a bench trial, entered judgment for Mary Jane Clark in the amount of $5,375. General Foods argues that the court erred in entering such judgment and seeks a reversal.

Four issues are raised: (1) whether the evidence established a contract between the parties; (2) whether terms of the contract were properly supplied or shown by custom and usage in the trade; (3) whether expert testimony was properly admitted on the question of custom and usage; and (4) whether the evidence established a severance of the relationship between the parties so as to establish that plaintiff had no right to recovery.

The facts are largely undisputed. In the early spring of 1976, General Foods was in need of a packaging engineer at their Kankakee division. They advertised the open position in the Chicago newspaper want-ads and may also have sent a "flyer" to Management Professional Specialists International (hereinafter MPSI), plaintiff's employment agency. In response to the advertising, MPSI contacted General Foods and informed them that they had an individual who met the requirements for the packaging engineer's job. MPSI sent General Foods the resume of their applicant, one Brian Hopkins, with his name and address withheld, as is the custom in the employment business. After determining that the resume indicated the individual's adequate qualifications for the position they wished filled, General Foods requested MPSI to supply them with the applicant's name, address and phone number so that an interview could be scheduled. Testimony indicated that the foregoing procedure is standard practice between business and employment firms with regard to initial contacts and supplying applicants. General Foods then contacted Mr. Hopkins and set up an interview with him for the middle of May. Subsequent to setting the interview, Mr. Hopkins cancelled the May interview and another was reset for June 1, 1976. Before the newly scheduled June 1 interview occurred, General Foods filled the open position for a packaging engineer. General Foods cancelled the second interview and informed Hopkins that the position had been filled and that he was no longer under consideration. The testimony of the personnel

employees at General Foods was that they then disposed of Hopkins' resume sent by MPSI.

Three months later, in August 1976, General Foods developed another opening for a packaging engineer, specifically for a senior packaging engineer. A different employment firm, Management Recruiters of Indianapolis, in response to advertisements for the open position, sent to General Foods a resume on August 12, 1976. The resume that firm supplied was that of Brian Hopkins. An interview was scheduled and conducted, and on September 12, 1976, Brian Hopkins was offered the position. He began working for General Foods in October 1976. General Foods thereafter received a bill for services rendered from Management Recruiters in the amount of $4,730, being approximately 22% of Hopkins' starting salary. All contacts with Management Recruiters, as with plaintiff MPSI, were oral, and no written contract was ever entered into between General Foods and either employment agency. General Foods paid the Management Recruiters' bill.

On July 6, 1977, MPSI informed General Foods that in the process of updating their files, they had discovered that Mr. Hopkins had been employed by them. They enclosed a bill for their services in supplying the resume of applicant Hopkins. John Engler, General Foods personnel man, informed MPSI that Hopkins had been placed in his position by another agency to whom a fee had already been paid. General Foods informed MPSI that they felt no obligation to MPSI and would not pay the bill. MPSI responded by demanding payment, in the amount of $5,375, being 25% of the starting salary paid Hopkins, in accordance with their fee schedule. The parties were unable to work out their differences amicably. MPSI brought the instant suit upon an oral contract for services rendered in connection with General Foods' hiring of Brian Hopkins.

The underlying theory of MPSI's action was that there existed an oral contract between MPSI and General Foods when General Foods requested that MPSI forward the name, address and phone number of Brian Hopkins for consideration as packaging engineer. According to plaintiff, the contract, by custom and usage in the recruitment and employment business, included provisions that a fee, based upon plaintiff's fee schedule, would be paid it if Hopkins was hired for that position, or a similar one, within one year of the referral. At trial, MPSI established, through the testimony of General Foods personnel manager John Engler, that General Foods had frequent contacts with employment agencies and that most of their hiring of management personnel was done through such agencies. Engler also acknowledged that the initial contact and conduct between General Foods and MPSI in this case was the usual method of doing business in the field. He also acknowledged that service charges are usually a set percentage of the starting salary, as established

by the employment firm's fee schedule. Engler admitted that had General Foods hired Hopkins in June, as a result of MPSI's services, he would have paid them for their services. Put succinctly then, the evidence established the existence of an oral contract between General Foods and MPSI and also that such oral contractual agreements, with much left to implication, are a standard practice in this area of business. It was also established that General Foods had a great deal of experience in the recruitment field.

The dispute, in actuality, does not center upon the existence of a contract, although that is put in issue by General Foods. Engler's testimony, however, admits the existence of the contract. The real dispute centers upon whether the contract included a provision, supplied by custom and usage, that General Foods would pay MPSI for its services if, within one year of their referral, Brian Hopkins was hired for the position advertised or a similar position. On this crucial area of dispute, plaintiff's evidence consisted of the testimony of Rita Oster, a certified employment consultant with over 26 years in the employment business, and of plaintiff Mary Jane Clark, an executive recruiter with nearly 25 years' experience in the employment field. Both these women testified as to the existence in the professional employment and recruitment field of a long standing custom and usage with respect to the length of the contract term. Mrs. Oster testified that once an employer requests information concerning an applicant referred by an agency, it is an accepted custom and usage that the employer will pay a fee to the agency by whom the applicant was referred if, within one year thereof, it hires the applicant for the position applied for or a similar position. She also testified that the nature of the contacts between General Foods and MPSI in this case was that generally prevailing in the employment business. With regard to the question of the existence of a one-year contract term, we note that John Engler testified that he had numerous dealings with recruiters in personnel placement for General Foods, but, nevertheless, he was not aware of any custom and usage in the industry respecting a one-year duration of the employment services contract. Having set forth the pertinent parts of the record in this case, we turn now to the issues raised by General Foods.

■■ General Foods initially contends that there was no contract between it and MPSI with respect to Brian Hopkins because there was no acceptance by them and because no agreement was reached as to compensation, an essential term. We cannot agree. We find a contract between the parties existed from the moment that General Foods responded to the resume sent them by asking that MPSI supply the name and address of the applicant whose resume they received. Defendant's personnel man, John Engler, admitted the existence of that contract and stated that had they hired Hopkins at that time, General Foods would

have paid the service fee to MPSI. Neither does the lack of an exact figure as to compensation render the otherwise valid contract invalid. Engler, as well as plaintiff's expert witness, testified that compensation was routinely based upon a percentage of starting salary, set by the agency's fee schedule. The testimony indicated that frequently the fee schedule was supplied to an employer subsequent to the employer's request for an applicant's name and address. Given this practice and Engler's admission of the existence of a contract, we find that a contract was in existence. As to the 25% fee ultimately charged by MPSI, General Foods cannot seriously claim that the 25% fee is excessive or out of the accepted range, given the fact that their subsequent contract with Management Recruiters called for compensation at the rate of 22% of the starting salary.

■■■ The second issue raised by General Foods is whether the evidence was sufficient to establish a custom and usage relating to the one-year term of the contract, such that the provision to that effect can be said to have been part of the contract between the parties. The rules with respect to this are well established. As long ago stated in *Kelly v. Carroll* (1921), 223 Ill. App. 309, 315-16:

> "A usage or custom to be binding must be so uniform, long-established and generally acquiesced in and so well known as to induce the belief that the parties contracted with reference to it, nothing appearing in their contract to the contrary, and the existence of such a custom or usage cannot be considered established when the proof consists of a few isolated instances. [Citation.]
> * * * When the custom of a particular trade, business or profession is involved, its existence cannot be regarded as having entered into the contracts of others not engaged in such trade, business or profession unless such persons have had actual knowledge of the custom or are shown to have been previously engaged in transactions where the custom has been recognized. The rule that a usage or custom affects contracts, generally rests upon the theory that the parties in making the contract had such custom in their minds and stipulated with reference to it, thereby making it a part of their contract. When existence of the custom has been proved, it has the force of law within the sphere where established and enters into the contracts of those within that sphere who have knowledge of its existence. A presumption of such knowledge may be shown by facts and circumstances."

When a person or company deals in a market, it is presumed that they deal in accordance with general and uniform customs and usages

prevalent in that market. (*Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co.* (1929), 334 Ill. 281, 165 N.E. 793; *Katz v. Brooks* (1965), 65 Ill. App. 2d 155, 212 N.E.2d 508; *Fifteenth Avenue Christian Church v. Moline Heating & Construction Co.* (1970), 131 Ill. App. 2d 766, 265 N.E.2d 405.) Whether a custom or usage is prevalent in a particular field of business is a question of fact for the fact-finder, to be determined from the evidence presented.

■■ In the instant case, the circuit court, sitting without a jury, found that the evidence presented established a custom and usage prevalent in the employment and recruitment field and that such custom and usage was as plaintiff alleged. A one-year provision was a generally accepted part of such contracts. We find the evidence sufficient to support the circuit court's determination on this issue. Two expert witnesses testified as to the existence of that custom and usage. Mrs. Oster testified that such usage had been going on for many years in the field and that it originated to protect employment agencies. In the instant case, the evidence indicated that General Foods had extensive dealings in the field. Most of their hiring of management personnel was done through such agencies. Thus, given its experience and dealings in the trade and business, General Foods, on the record, must be presumed to have contracted with the established custom and usage in mind. It is not necessary, as the above-cited authorities make clear, to prove actual knowledge of the custom and usage under the circumstances.

This is not a case where one party can be said to have been an outsider with respect to the trade or business, and it is not a case where a party had only isolated contacts in the profession or business in question. General Foods' argument that since it had not before come across the particular situation herein it must be viewed as an outsider in the field is unconvincing. Given General Foods' extensive experience in the employment recruitment area, the fact that they never before had to address a situation such as that in this case, indicates little with regard to the general customs and usages in the field. Plaintiff's evidence established the existence of a one-year term to such contracts, by custom and usage. General Foods was unable to contradict plaintiff's witnesses as to this and offered no expert testimony denying the existence of such custom and usage. The circuit court did not err in finding that, on the evidence presented, a custom and usage was shown to have existed.

■■ The third issue raised is whether the expert testimony on custom and usage was improperly admitted. General Foods argues that since Mrs. Oster, who had been in the business over 26 years, had never faced the precise factual situation involved in this case, she was, therefore, not qualified as an expert in the field. Mrs. Oster, by reason of experience and

education, was shown to be an expert in the field of executive employment and recruiting. She testified to a long-standing, acknowledged, generally applicable one-year rule with respect to such oral employment contracts. As noted previously, this testimony was not contradicted.

Mrs. Oster's testimony was also corroborated by that of plaintiff Mary Jane Clark. Customs and usages are, by definition, general and apply broadly to a variety of factual situations within the areas where they have developed. It is not necessary to show that an expert has first-hand knowledge of a custom and usage being used in precise factual circumstances identical to the circumstances of the case in which he or she testifies. The presence of unique factual circumstances may have some bearing on the application of the custom in a particular case, but it does not disqualify otherwise qualified experts in the business, profession or field involved. We find the expert testimony was properly admitted and was sufficient to establish a custom and usage.

General Foods' final argument is that there was a "complete severance" of any relationship between it and MPSI when the first job was filled. Put more appropriately, they contend that when they filled the first job opening for a packaging engineer, their action operated to terminate any contractual obligations General Foods might have had to MPSI. Therefore, according to the argument, when a second packaging engineer position opened up a couple of months later, General Foods no longer had a contract with MPSI with regard to Brian Hopkins. The difficulty with such argument lies in the fact that it ignores the custom and usage herein established, which fixes a one-year term for the length of such contracts. Expert testimony indicated that such contracts, for a duration of one year from initial referral, cover the position for which the applicant was originally referred and other similar positions. There is no question that the positions involved herein, associate packaging engineer and senior packaging engineer, are essentially similar, as the circuit court found. Given the terms of the contract, as shown in the record, General Foods could only have defeated MPSI's contract action if it had shown that the contract had been terminated or that the one-year provision had been waived by MPSI. Neither showing was made in this case. An agent for MPSI did testify that he recognized that, as far as the first position was concerned, Brian Hopkins was no longer under consideration. Such statement does not indicate that MPSI considered the contract terminated for all purposes at that time or that they waived any of its provisions. That General Foods may have mistakenly felt it had no further obligation to MPSI, and on that basis paid another employment agency, does not alter the substance of the contract which it had with MPSI. No termination or waiver was shown to have been accomplished.

For the reasons stated, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

STOUDER, P. J., and BARRY, J., concur.