M. ALAN SNEDDEN, d/b/a Management Recruiters of Bloomington, Plaintiff-Appellant, *v.* GENERAL RADIATOR DIVISION OF CHROMALLOY AMERICAN CORPORATION, Defendant-Appellee.

Fourth District   No. 4—82—0310

Opinion filed December 28, 1982.

Costigan & Wollrab, of Bloomington, for appellant.

Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (James T. Foley, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

On July 16, 1981, plaintiff, M. Alan Snedden, d/b/a Management Recruiters of Bloomington, filed suit in the circuit court of McLean County seeking to recover money damages from defendant, General Radiator Division of Chromalloy American Corporation, under a contract for employee recruitment services. After a bench trial, the court entered judgment for the defendant on April 22, 1982. On appeal plaintiff asserts the evidence entitled him to judgment as a matter of

law.

Most of the evidence was not in dispute. To the extent a dispute existed, we must view the evidence most favorably to the defendant in whose favor the trial court found. Plaintiff operated an employment agency. In late August of 1980 defendant had vacancies in several positions including that of tool room supervisor and its agent contracted plaintiff with reference to plaintiff's furnishing applicants for the jobs. Interviews were set for September 10, 1980, and the names of several applicants were sent by plaintiff to defendant. On September 8, 1980, Angela Painter, plaintiff's employee, contacted Dale Bonnema, to see if he wanted to apply for the tool room supervisor position. According to Bonnema, whose testimony on the subject was most favorable to defendant, he told Painter he would come from his home in Cumberland County to Bloomington for an interview as a courtesy to her although he had already accepted other employment in Iowa.

On September 10, 1980, Don Odorizzi, a manager for defendant, interviewed five persons sent by plaintiff. On that date he received a written document which set forth the conditions upon which plaintiff was to be entitled to a commission. The names of Bonnema and Mike Rebmon had been added to the list of interviewees just before the interviews although Odorizzi had received no resumes concerning them. The evidence was in sharp dispute as to the nature and extent of the interview. According to both Odorizzi and Bonnema, it lasted only about 10 minutes and Odorizzi did not offer Bonnema a job because Bonnema already had a job and Odorizzi had no authority to make an offer. After the interview, Bonnema proceeded to Iowa where he began employment with General Thermo, Inc. Defendant did hire Rebmon shortly after their interview with him on that day.

After Bonnema had worked for General Thermo, Inc., for a few months, he apparently became interested in working for defendant. In late January of 1981, a supervisory employee of General Thermo advised Jeannette Jones, who was in charge of recruiting for defendant, that Bonnema might be available for employment and subsequently sent Bonnema's resume to Jones. Ms. Jones had not been involved with defendant's contact with Bonnema the previous September. On February 24, 1981, Bonnema and Odorizzi had breakfast together, after which Bonnema was interviewed. He was subsequently hired and started work on March 9, 1981, at a salary of $23,600 per year. No direct evidence was presented that before Bonnema was hired by defendant, anyone employed by defendant remembered that Bonnema had been sent to defendant by plaintiff in September of 1980 and in-

terviewed at that time.

Plaintiff and Richard L. Ogden, the operator of another Bloomington employment agency, both testified to a long standing custom within their business that an employer will pay a fee to a recruiter for any employee who is hired by the employer within one year of being referred to the employer by the recruiter. Ogden stated that for a fee to have been earned by an agency, four criteria must be met: (1) the agency must have discussed the applicant with the employer; (2) the employer has agreed to interview the applicant; (3) the applicant has agreed to interview with the employer; and (4) the agency or the employer must have set the arrangements in motion for the interview. When asked whether the person interviewed would have to be an "applicant" for the job, Ogden responded, "No. It can be applicant, candidate, whichever words you like to use."

No witness directly refuted the existence of the foregoing custom. Ms. Jones stated she had been dealing with personnel agencies since 1978 although only about 10% of her hiring had been accomplished through recruiters. She testified she was unaware of the custom.

No written agreement had been entered into between the parties here. At the time of the interviews on September 10, 1980, plaintiff had sent to defendant a written statement which stated in part that plaintiff would be entitled to a commission if defendant employed a candidate who was referred to defendant through plaintiff's efforts. Plaintiff maintains that the custom and usage in the trade as testified to by plaintiff and Ogden should be incorporated in the tacit agreement of the parties because the parties should be conclusively presumed to have contracted with the custom in mind.

The trial judge made the following findings:

"1. That there is a dispute *in re* whether Defendant requested or received any information or agreed to interview Dale Bonnema prior to September 10, 1980.

2. Plaintiff has established that there is a custom within the trade that any person tendered to a prospective employer who is hired within one year by that employer thereby entitles a recruiter to a fee.

3. A usage or custom to be binding must be so uniform, long established and generally acquiesced in and so well known as to induce the belief that the parties contracted with reference to it ***. See, *Clark v. General Foods Corporation*, 81 Ill. App. 3d 74. However, to have such a custom to become a term of a contract when one party is not engaged in such trade, the party seeking to have such custom become a term of the con-

tract must prove that the party to be charged knew of the custom. Such knowledge may be inferred from the facts and circumstances in the case. In *Clark v. General Foods Corporation*, 81 Ill. App. 3d 74, the Defendant hired almost all its management personnel through 'recruitments' agencies and that certainly is not the facts in the case at bar.

5. Plaintiff has failed to prove his case by a preponderance of the evidence." (The findings contained no paragraph 4.)

We do not consider the uncertainty as to whether defendant requested or received any information or agreed to interview Bonnema prior to September 10, 1980, to be a basis for the judgment for the defendant. Defendant requested applicants and Bonnema was tendered by plaintiff, defendant apparently agreed to interview him, and an interview, perfunctory as it may have been, actually took place. We interpret the criteria testified to by Ogden not to require that the preliminary matters described occur on a day prior to the interview. It is notable that under his criteria, responsibility for a fee could attach although no interview actually took place.

Of much greater concern is the trial court's determination in paragraph 3 that defendant's agents were not sufficiently engaged in the "trade" to be charged with knowledge of the custom.

Plaintiff places major reliance upon the case of *Clark v. General Foods Corp.* (1980), 81 Ill. App. 3d 74, 400 N.E.2d 1027. There the plaintiff employment agency sent the defendant employer the prospective employee's resume, absent his name, in response to an advertisement in the spring of 1976. Defendant thereafter requested the individual's name and arranged for an interview. Before the interview was held in June, the position was filled. Defendant's employees testified that they then disposed of the resume. In August, the same position opened up again and a different recruiter responded to defendant's ad with the resume of the same prospective employee. He was hired and plaintiff demanded and was refused a commission. The defendant's personnel manager's testimony indicated it had frequent contacts with employment agencies and most of their hiring was done in that manner. There, as here, evidence was presented of the custom of a fee being due if the applicant was hired within one year of the referral by the agency to the employer. There, as here, the personnel manager of the defendant denied knowledge of the custom.

The *Clark* court quoted a long passage from *Kelly v. Carroll* (1921), 223 Ill. App. 309, 315-16, a portion of which stated:

"When the custom of a particular trade, business or profession is involved, its existence cannot be regarded as having entered

into the contracts of others not engaged in such trade, business or profession unless such persons have had actual knowledge of the custom or are shown to have been previously engaged in transactions where the custom has been recognized. The rule that a usage or custom affects contracts, generally rests upon the theory that the parties in making the contract had such custom in their minds and stipulated with reference to it, thereby making it a part of their contract. When existence of the custom has been proved, it has the force of law within the sphere where established and enters into the contracts of those within that sphere who have knowledge of its existence. A presumption of such knowledge may be shown by facts or circumstances."

Defendant points out that defendant's personnel manager had made less use of employment agencies than had the personnel managers in *Clark*. It is also apparent that there the findings of the trier of fact were in favor of the plaintiff while here they were in favor of the defendant. Nevertheless, the evidence showed defendant to have hired 7 or 8 salaried employees through recruiting agencies since 1978. Thus, their use of such an agency was not an isolated incident. Moreover, the custom relied upon by plaintiff is not an obscure or unlikely one. Any sophisticated business entity hiring through a recruiting agency would be expected to realize that some rule containing a time frame would be necessary to determine whether a fee is due because there are times when a recruiter brings a prospective employer and employee together but no hiring occurs until some later date.

We conclude that under the circumstances here, defendants should be held as a matter of law to constructive knowledge of the custom testified to here. See *Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co.* (1929), 334 Ill. 281, 290, 165 N.E. 793, 796; *Fifteenth Avenue Christian Church v. Moline Heating & Construction Co.* (1970), 131 Ill. App. 2d 766, 265 N.E.2d 405.

Defendant maintains the trial court could have found that no contract of any kind was entered into between the parties concerning the Bonnema interview. However, the evidence was undisputed that defendant requested applicants for various positions from plaintiff. Plaintiff sent defendant information in regard to fees. Defendant proceeded to interview applicants. By this conduct, defendant impliedly agreed to pay plaintiff at the stated rate for any applicant it hired. Plaintiff tendered Bonnema for an interview and a perfunctory interview took place. No showing was made that Bonnema would not have accepted employment at the time had a sufficiently attractive offer

been made. Under these circumstances, the possible employment of Bonnema became a matter covered by the contract between the parties.

■ Determination of the proper legal principles to apply to the facts of this case is not easy. Defendant's agents were apparently unaware that Bonnema had previously been sent to them by plaintiff. However, plaintiff did bring the parties together and an employment relationship developed within a few months. We conclude he is entitled to the fee set forth in the documents sent to defendant. Upon that basis, plaintiff is entitled to a fee of $5,664.

Accordingly, the judgment for defendant is reversed and the cause remanded to the circuit court of McLean County with directions to enter judgment for plaintiff in the sum of $5,664.

Reversed and remanded.

MILLS and TRAPP, JJ., concur.