No. 2--01--1302 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

MICHAEL J. VINZENZ, d/b/a Agri- ) Appeal from the Circuit Court

Associates,                     )  of Kane County.

) 

Plaintiff-Appellant, )

) No. 01--ARK--25

v. )

)

HINTZSCHE FERTILIZER, INC., ) Honorable

) Richard J. Larson,

Defendant-Appellee. ) Judge, Presiding.

________________________________________________________________

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Michael J. Vinzenz, d/b/a Agri-Associates, appeals from a summary judgment that the trial court entered in favor of defendant, Hintzsche Fertilizer, Inc.  Plaintiff contends that, contrary to the trial court's ruling, he was entitled to a fee for the employment recruitment services he provided to defendant notwithstanding defendant's payment of a fee to another employment recruiter.  Plaintiff argues that he was entitled to a fee because he referred a job candidate to defendant before the other recruiter referred the same job candidate whom defendant later hired for the job.  For the reasons that follow, we affirm.

The material facts are not in dispute.  Plaintiff is an employment recruiter who, for a fee, finds prospective employees for companies.  Defendant is a corporation with its principal place of business in Kane County, Illinois.

In September 1999, defendant began a search for a new controller to replace the controller who would be resigning and leaving the company effective December 31, 1999.  Steven Carlson, defendant's chief financial officer, was responsible for hiring the new controller.  In seeking candidates for the job, Carlson contacted several employment recruiters.  Carlson informed the recruiters that potential candidates should meet certain criteria.  The criteria included a requirement as to location and a requirement that the candidate's current salary be less than $60,000.

Plaintiff was one of the recruiters that Carlson contacted.  On September 22, 1999, plaintiff faxed the resumes of two potential candidates for the controller position to Carlson.  One of the candidates was Larry Kakacek.  Kakacek's resume indicated that he lived in Iowa and that he was currently earning $67,000.  Plaintiff had previously sent Carlson a pamphlet containing his fee schedule.  The fee schedule showed that plaintiff's general fee for recruiting, on a contingency basis, a job candidate that an employer hired was 25% of the employee's first year's earnings.

On September 23, 1999, Carlson telephoned plaintiff and told plaintiff that defendant was not interested in hiring Kakacek because defendant was looking for candidates who were located closer to defendant and who had a lower salary than Kakacek.  Thereafter, plaintiff called Carlson every week or two and inquired about the controller position.  Plaintiff did not submit any additional resumes to Carlson and did not ask Carlson to reconsider his rejection of Kakacek's resume.

On October 12, 1999, Rich Connell, another employment recruiter, faxed Kakacek's resume to Carlson for the controller position.  In a subsequent affidavit, Carlson stated that when he received Kakacek's resume from Connell he did not recall previously seeing the resume.  Carlson called Connell and told him that Kakacek was too expensive and too far away but that defendant was beginning to run out of options.  Connell responded that Kakacek was anxious to find other work and might be willing to accept a pay cut.  Thereafter, Connell arranged an interview between Kakacek and Carlson.  Over the next several weeks, Connell facilitated communications between Kakacek and Carlson.  Connell also initiated discussions with Kakacek regarding, 
inter
 
alia
, compensation, benefits, and a starting date.

On November 30, 1999, defendant hired Kakacek for the controller position at an annual salary of $67,000 and agreed that Kakacek could start his employment with defendant after January 1, 2000.  Defendant later paid a recruitment fee to Connell.  The fee was $16,750, 25% of Kakacek's first year's salary.

On January 5, 2000, plaintiff called Carlson and learned that defendant had hired Kakacek.  Plaintiff told Carlson that he, plaintiff, was entitled to a recruitment fee for the services that he had provided to defendant with respect to Kakacek.   Carlson responded that he did not recall plaintiff sending Kakacek's resume and that he did not believe that plaintiff was responsible for defendant's hiring of Kakacek.

After defendant refused to pay plaintiff a recruitment fee related to defendant's hiring of Kakacek, plaintiff filed a complaint initiating the instant lawsuit.  Plaintiff sought to recover a fee for the recruitment services that he provided to defendant with respect to Kakacek.  The parties filed cross-motions for summary judgment.  The trial court granted defendant's motion and denied plaintiff's motion.  Plaintiff's timely notice of appeal followed.

On appeal, plaintiff contends that the trial court erred in granting defendant's motion for summary judgment.  Plaintiff argues that, under the circumstances of this case, there were two reasons why he was entitled to a fee for the services that he provided to defendant with respect to Kakacek:  (1) there was a contract between the parties and he substantially fulfilled his obligations to defendant under the contract and (2) agency principles required it.  Defendant responds that the trial court did not err in granting a summary judgment in its favor because (1) there was no contract between the parties; (2) even if a contract is deemed to have existed, plaintiff failed to fulfill his contractual obligations; and (3) plaintiff has waived any arguments based on agency principles.

Familiar principles guide us in resolving a challenge to a trial court's grant of a motion for summary judgment.  A court should grant summary judgment where "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2--1005(c) (West 2000).  While summary judgment can aid in the expeditious disposition of a lawsuit, it is a drastic measure and should be granted only "when the right of the moving party is clear and free from doubt."  
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986).  Our standard of review with respect to a grant of a summary judgment is 
de
 
novo
.  
Sollami v. Eaton
, 201 Ill. 2d 1, 7 (2002).

In this case, the parties agree that there is no genuine issue of material fact.  The parties also agree that the controlling law as to whether plaintiff was entitled to a recruitment fee based on contract principles is stated in three Illinois cases: 
Clark v. General Foods Corp.
, 81 Ill. App. 3d 74 (1980); 
Snedden v. General Radiator Division of Chromalloy American Corp.
, 111 Ill. App. 3d 128 (1982); and 
Polytechnical Consultants, Inc. v. All-Steel Inc.
, 134 Ill. App. 3d 187 (1985).

In 
Clark
, in response to a newspaper advertisement, the plaintiff employment recruiter, Clark, supplied to the defendant corporation a resume for an anonymous job candidate.  In response to the defendant's request, Clark later supplied the defendant with the information necessary for the defendant to contact the job candidate, Brian Hopkins.  Interviews were set up, but before Hopkins was interviewed, the defendant hired another candidate for the position.  Three months later, in response to advertisements, another employment recruiter sent the defendant Hopkins's resume for a position that was similar to the earlier position.  The defendant subsequently hired Hopkins for the second position and paid the other recruiter a fee of approximately 22% of Hopkins's starting salary.  After the defendant refused to satisfy Clark's subsequent demands for a recruitment fee, Clark sued the defendant.

In 
Clark
, the appellate court found that a contract existed between Clark and the defendant from the moment that the defendant responded to the resume sent to it by Clark by asking for Hopkins's identifying information.  
Clark
, 81 Ill. App. 3d at 77.  The court also determined that, based on custom and usage in the employment recruitment industry, the term of the contract was for one year.  
Clark
, 81 Ill. App. 3d at 78-79.  The court rejected the defendant's argument that the filling of the first position acted to terminate the contract.  
Clark
, 81 Ill. App. 3d at 80.  Based on its findings and determinations, the appellate court agreed with the trial court that Clark was entitled to a fee notwithstanding the defendant's payment of a fee to the other employment recruiter.  
Clark
, 81 Ill. App. 3d at 80.

In 
Snedden
, in response to requests from the defendant corporation, the plaintiff employment recruiter, Snedden, arranged interviews between the defendant and several job candidates.  One of the candidates was Dale Bonnema.  There was disputed evidence as to the nature of Bonnema's interview.  The defendant's evidence tended to show that the interview of Bonnema was perfunctory because Bonnema already had accepted other employment with another company, General Thermo, Inc.  In any event, the defendant did not hire Bonnema, and Bonnema began employment with General Thermo.  A few months later, a supervisory employee at General Thermo advised one of the defendant's agents that Bonnema was available for employment with the defendant and sent Bonnema's resume to the defendant.  The defendant subsequently hired Bonnema.  Snedden later filed suit against the defendant seeking a fee for the employment recruitment services he had supplied to the defendant with respect to Bonnema.

In 
Snedden
, Snedden and an expert witness both testified that there was a long-standing custom in the employment recruitment industry that required an employer to pay a fee to a recruiter for any employee whom the employer hired within one year of a recruiter's referral of the employee to the employer.  The expert witness also testified that a recruiter must have met four criteria for his agency to be entitled to a fee.  The four criteria are:

"(1) the agency must have discussed the applicant with the employer; (2) the employer [must have] agreed to interview the applicant; (3) the applicant [must have] agreed to interview with the employer; and (4) the agency or the employer must have set the arrangements in motion for the interview."  
Snedden
, 111 Ill. App. 3d at 130.

In 
Snedden
, the trial court entered a judgment in favor of the defendant.  The appellate court reversed the judgment and remanded the cause to the trial court for the entry of a judgment in favor of Snedden that included a fee commensurate with Snedden's fee schedule.  The appellate court determined that Snedden satisfied the criteria for entitlement to a fee and that the defendant had constructive knowledge of the custom and usage in the industry that required an employer to pay a fee to an employment recruiter if the criteria were satisfied and the employer hired the referred applicant within one year of the recruiter's referral of the applicant.  
Snedden
, 111 Ill. App. 3d 130-32.

In 
Polytechnical Consultants
, the plaintiff employment agency's complaint alleged that it submitted to the defendant corporation the resume of Floyd Borkhuis for a job opening as a die designer; that the defendant contacted the plaintiff for more information about Borkhuis; that the plaintiff helped arrange an interview between Borkhuis and the defendant; that the defendant then hired Borkhuis for the position; and that the plaintiff was therefore entitled to a fee for its services.

In 
Polytechnical Consultants
, Don Vitullo testified that in October 1981, while he was an employment recruiter for Professional Employment, Inc. (PEI), an employment recruitment agency, he sent Borkhuis's resume to the defendant; that the defendant's personnel manager, Colleen Reuland, then called him and told him that the defendant had no interest in Borkhuis; that in November 1981 he left PEI and went to work for the plaintiff; that in January 1982, on behalf of the plaintiff, he sent to the defendant Borkhuis's resume, which was virtually identical to the earlier resume he had sent to the defendant; that on January 12, 1982, Reuland called him and asked him to set up an interview with Borkhuis; that the interview occurred on February 4, 1982; that a few days later the defendant hired Borkhuis; and that the plaintiff then sent the defendant a bill for its services related to Borkhuis.  The record also contained an affidavit by Vitullo in which he asserted that, after he sent Borkhuis's resume to the defendant in October 1981, the defendant conducted a telephone interview with Borkhuis, but the defendant did not then make Borkhuis a job offer and there was no further contact with Borkhuis until Vitullo, as an employee of the plaintiff, sent Borkhuis's resume to the defendant in January 1982.

In 
Polytechnical Consultants
, Reuland testified that after her telephone interview with Borkhuis in 1981 she determined that the defendant was not interested in hiring Borkhuis because he was not interested in a certain kind of work; that in January 1982, after receiving another resume from Vitullo for Borkhuis, she contacted Vitullo and the next day had a telephone conversation with Borkhuis; that Vitullo then arranged an interview between the defendant and Borkhuis; and that the defendant then hired Borkhuis.  In an affidavit, Reuland stated that after receiving Borkhuis's resume and interviewing him in October 1981 she found him to be acceptable for employment with the defendant; that Borkhuis accepted a job offer from the defendant after a second interview in January 1982; and that the defendant then paid a recruitment fee to PEI.

In 
Polytechnical Consultants
, the trial court ruled that the plaintiff was entitled to the recruitment fee because, despite PEI's initial referral of Borkhuis to the defendant, the plaintiff was the motivating force leading to the hiring of Borkhuis.  The appellate court noted that both parties relied on 
Clark
 and 
Snedden
.  The court stated that 
Clark
 and 
Snedden
 established that, according to custom and usage, the general rule in determining whether an employment recruitment agency was entitled to a fee was that "the agency which made the first referral of a job candidate earned the recruitment fee where that applicant was hired within one year for the same or similar position, notwithstanding an intervening referral of that candidate by another agency."  
Polytechnical Consultants
, 134 Ill. App. 3d at 191.  The court concluded that the "motivating force test" that the plaintiff's expert had discussed and that the trial court apparently had accepted was a restatement of the criteria set out in 
Snedden
 for entitlement to a recruitment fee
.  In explaining how the motivating force test was related to the general rule, the 
court stated:

"Under our interpretation of 
Clark
 and 
Snedden
, the proper approach is to first determine whether [PEI], which had a possible priority to the fee because it made the first referral of the candidate, also met the 
Snedden
 criteria.  If so, that agency is entitled to the recruitment fee.  If not, only then would plaintiff's activities be relevant."  
Polytechnical Consultants
, 134 Ill. App. 3d at 191-92.

The court then concluded that PEI had satisfied the 
Snedden
 criteria and that PEI was therefore entitled to the recruitment fee.

Here, we agree with the parties that 
Clark
, 
Snedden
, and 
Polytechnical Consultants
 are controlling.  We also agree with the principles enunciated in 
Polytechnical Consultants
 for determining whether plaintiff is entitled to a recruitment fee, 
i.e.
, that in determining whether plaintiff was entitled to a fee because he made the first referral of Kakacek to defendant, we must decide whether plaintiff met the 
Snedden
 criteria.

Our review of the record shows that plaintiff met only one of the four 
Snedden
 criteria.  The criterion that plaintiff met was  that he discussed the applicant, Kakacek, with the employer.  This occurred when Carlson called plaintiff and told plaintiff that defendant was not interested in Kakacek because he lived too far away and because his salary was too high.  The record shows that plaintiff did nothing further with respect to Kakacek's employment prospects with defendant.  We realize that, strictly speaking, the other 
Snedden
 criteria were ultimately satisfied.  However, plaintiff did nothing to satisfy these criteria.  Rather, it was the other agency that was the motivating force in satisfying the other criteria.  Accordingly, to the extent that the trial court based its ruling on the principles enunciated in 
Clark
, 
Snedden
, and 
Polytechnical Consultants
, we conclude that the trial court did not err in granting summary judgment in favor of defendant.  Therefore, it is not necessary for us to determine whether a contract existed between plaintiff and defendant.

We also agree with defendant that plaintiff has waived its arguments that are based on agency principles.  Plaintiff has not cited any authority in support of its agency-based arguments.  Arguments not supported by citation to relevant authority are deemed waived.  See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001.

Based on the foregoing, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

HUTCHINSON, P.J., and BOWMAN, J., concur.