2020 IL App (1st) 181647-U

No. 1-18-1647

Order filed February 6, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| BLUESTONE EXECUTIVE SEARCH, LLC, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 17 M1 132307 |
| v. | ) | |
| | ) | |
| STAFF MANAGEMENT SOLUTIONS, LLC, | ) | Honorable |
| | ) | Clare J. Quish, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's judgment in favor of plaintiff on its breach of contract claim because the judgment is not against the manifest weight of the evidence, but we vacate the award of prejudgment interest because it is neither statutorily nor contractually authorized.

¶ 2    Bluestone Executive Search, LLC (Bluestone), an employment recruiting firm, sued Staff Management Solutions, LLC (Staff Management) for breach of contract, alleging that Staff Management failed to pay a contractually required placement fee after it hired a candidate that

Bluestone referred to it. Following a bench trial, the circuit court entered judgment for Bluestone, awarding it $11,000 for its placement fee plus $10,761.31 in prejudgment interest. On appeal, Staff Management contends that the parties did not have a valid contract and that, in any event, Bluestone is not entitled to a placement fee because it was not the "motivating force" behind Staff Management's decision to hire the candidate. Staff Management also argues that the circuit court's prejudgment interest award is neither statutorily nor contractually authorized. For the reasons that follow, we vacate the circuit court's award of prejudgment interest but affirm its judgment in all other respects.[1]

¶ 3                                    I. BACKGROUND

¶ 4     Bluestone filed a complaint against Staff Management for breach of contract. The complaint alleged that Bluestone and Staff Management signed a written contract on July 29, 2015, for Bluestone to provide recruiting services to Staff Management. The contract, a copy of which was attached to the complaint, provided that if a "candidate [was] referred to Staff Management by [Bluestone]" and Staff Management "hired [the candidate], directly or indirectly, for any position" within one year of the date of referral, Staff Management would pay Bluestone a placement fee equal to 20% of the hired candidate's first-year annual compensation. The contract further provided that Staff Management would pay the placement fee within 30 days of the date on which the candidate was hired. Bluestone alleged that it referred Gary Lennon to Staff Management and that Staff Management subsequently hired Lennon at a annual salary of $90,000 but refused to pay the placement fee due under the contract. Bluestone sought

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

damages of $18,000 plus prejudgment interest under section 2 of the Interest Act, which provides for prejudgment interest at a rate of 5% per year "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." 815 ILCS 205/2 (West 2018).

¶ 5    At trial, Bluestone's vice president, Robert Kruk, testified that Bluestone had provided recruiting services to Staff Management since 2009 and that the parties had operated under a series of contracts during that period. Although the contract attached to Bluestone's complaint was not signed until July 29, 2015, Kruk testified that it was "a continuation" of a prior contract with identical terms that was in effect between the parties in June 2015, when Staff Management asked Bluestone to help it identify candidates for a regional director of operations position. In response to that request, Bluestone searched its internal databases and external sources such as LinkedIn and identified 220 potential candidates, 45 of whom Bluestone interviewed. Kruk estimated that Bluestone devoted nearly 200 man hours over a two-week period to searching for and interviewing candidates. On June 16, Bluestone submitted the names and resumes of eight candidates, including Gary Lennon, to Staff Management. Bluestone then arranged for Staff Management to interview Lennon on July 8. After the interview, Staff Management decided not to offer Lennon the regional director position. The following day, Staff Management explained to Bluestone that Lennon was not a good fit for that position but would be better suited for a program manager position that might be available in the future. Kruk conceded that Bluestone made no further efforts to place Lennon in the program manager position. However, in December 2015, after learning that Staff Management had hired Lennon as a senior program manager, Bluestone sent Staff Management an invoice for its placement fee. Kruk testified that Bluestone was unable to verify Lennon's annual salary because Staff Management refused to

provide Lennon's W-2 tax form, so Bluestone calculated the placement fee based on the assumption that Lennon's starting salary was $90,000 per year, which was consistent with the salary he earned at his previous job. The invoice stated that overdue payments would be subject to a service charge of 2.3% per month. Kruk testified that he attempted to speak with Staff Management's vice president and its accounts payable department about the invoice but received no response. Staff Management did not pay any of the amount due on the invoice.

¶ 6 After Bluestone rested, Staff Management moved for judgment in its favor. Citing the rule that a contract generally may not be founded on past consideration, see *Johnson v. Johnson*, 244 Ill. App. 3d 518, 528 (1993), Staff Management argued that the parties' contract was invalid because Bluestone had already referred Lennon to Staff Management at the time the parties signed the contract on July 29. The trial court denied the motion, noting Kruk's testimony that a prior contract (with identical terms) was in effect when Bluestone rendered its services.

¶ 7 Staff Management then called three witnesses. These witnesses established that, on December 1, 2015, without the involvement of Bluestone, Lennon emailed his resume to Bruce Kabat, a Staff Management employee who was a former colleague of Lennon's brother. Kabat forwarded Lennon's resume to Eusebio Islas, a managing director at Staff Management, who in turn forwarded the resume to Marty Pittman, an executive director at Staff Management. After interviewing Lennon, Pittman hired him as a senior program manager with an annual salary of $55,000. According to Pittman and Islas, the senior program manager position was not an executive-level position and was "very different" from the regional director position for which Bluestone had submitted Lennon. Kabat received an internal referral fee of $1,500 for forwarding Lennon's resume to his supervisors.

¶ 8     In closing argument, Bluestone asked the trial court to draw an adverse inference from Staff Management's refusal to produce Lennon's W-2 form and to conclude that his annual salary was $90,000 rather than $55,000, as Staff Management claimed. In addition, Bluestone clarified that it was seeking prejudgment interest, not under the Interest Act, but based on the 2.3% monthly service charge included on its invoice.

¶ 9     After taking the matter under advisement, the trial court entered judgment for Bluestone, awarding it $11,000 plus $10,761.31 in prejudgment interest.[2] The court noted that Bluestone was seeking prejudgment interest based on the service charge included on its invoice rather than under the Interest Act and thus calculated the interest at the rate of 2.3% per month.[3] Staff Management timely appealed.

¶ 10                                    II. ANALYSIS

¶ 11     Staff Management challenges the circuit court's judgment for Bluestone on the breach of contract claim and its award of prejudgment interest. Staff Management contends that the circuit court erred in denying its motion for a directed finding at the close of Bluestone's case. In the motion, Staff Management argued that it was entitled to judgment in its favor because Bluestone failed to prove the existence of a valid contract. "In all cases tried without a jury, [a] defendant may, at the close of plaintiff's case, move for a finding or judgment in his or her favor." 735 ILCS 5/2-1110 (West 2018). However, if the trial court denies the motion and the defendant "proceed[s] to adduce evidence in support of his or her defense," then "the motion is waived." *Id.* Staff Management called witnesses and adduced evidence in support of its defense after the

_____

[2] The court's order is silent on the matter, but it apparently found that Lennon's annual first-year salary was $55,000 (as $11,000 is 20% of $55,000).

[3] Although again not discussed in the court's order, the court appears to have awarded Bluestone prejudgment interest for a period of 30 months.

trial court denied its motion for judgment at the close of Bluestone's case. Staff Management thus waived any appellate challenge to the denial of its motion. See *Pancoe v. Singh*, 376 Ill. App. 3d 900, 909 (2007) ("Where a section 2-1110 motion is denied and the defendant thereafter presents evidence in his defense, the defendant waives any complaint that the denial of the motion was error.") (internal quotation marks omitted).

¶ 12    To the extent that Staff Management challenges the trial court's judgment at the close of the case, rather than the denial of its midtrial motion, its argument still fails. "To succeed on a claim for breach of contract, a plaintiff must plead and prove the existence of a contract, the performance of its conditions by the plaintiff, a breach by the defendant, and damages as a result of the breach." *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd*., 376 Ill. App. 3d 1006, 1014 (2007). To establish the existence of a valid contract, the plaintiff must prove offer and acceptance, definite and certain terms, consideration, and the performance of all necessary conditions. *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1027 (2007). Staff Management contends that the July 29 contract that Bluestone attached to its complaint and introduced at trial was not a valid contract because it was not based on adequate consideration. In particular, Staff Management argues that the promise it made in that contract to pay a placement fee for any hired candidate referred by Bluestone is not enforceable with respect to Bluestone's referral of Lennon because Bluestone had already referred Lennon before the parties entered the contract.

¶ 13    Staff Management correctly notes "the general rule *** that if the alleged consideration for a promise has been conferred prior to the promise upon which [the] alleged agreement is based, there is no valid contract." *Johnson v. Johnson*, 244 Ill. App. 3d 518, 528 (1993). But

Staff Management overlooks that an exception to that rule applies when "the consideration was rendered at the request of the promisor." *Worner Agency, Inc. v. Doyle*, 133 Ill. App. 3d 850, 857 (1985). Kruk's uncontradicted testimony established that Bluestone searched for, interviewed, and referred candidates, including Lennon, at Staff Management's request. Thus, although Bluestone referred Lennon to Staff Management prior to the execution of the July 29 contract, the promise that Staff Management made in that contract (to pay a placement fee for any candidate that it hired on a referral from Bluestone) is nevertheless valid and enforceable with respect to its hiring of Lennon because Bluestone's consideration (its referral of Lennon) was rendered at Staff Management's request.

¶ 14    Alternatively, even if the July 29 contract were unenforceable, Kruk testified (again without contradiction) that the parties had an earlier contract, with identical terms, that covered the time period at issue here. In particular, Kruk testified that the parties operated under a series of contracts during their years-long relationship and that the July 29 contract was simply "a continuation" of a prior contract that was in effect in June 2015, at the time that Staff Management requested Bluestone's assistance in identifying candidates for the regional director position. The existence of a contract and its terms are questions of fact to be resolved by the trier of fact. *Hedlund & Hanley, LLC v. Board of Trustees of Community College District No. 508*, 376 Ill. App. 3d 200, 205 (2007). Following a bench trial, the trial court's factual findings "will not be reversed unless they are against the manifest weight of the evidence," which occurs only if the findings are "unreasonable, arbitrary, or not based on evidence" or "when an opposite conclusion is apparent" from the record. *Id.* In light of Kruk's unrebutted testimony, it was not

against the manifest weight of the evidence for the trial court to find that a contract between the parties existed in June 2015 and that it contained terms identical to those of the July 29 contract.

¶ 15    Staff Management next argues that, even if the parties' contract is valid, Bluestone is not entitled to a placement fee under the contract's terms because it was not a "motivating force" for Staff Management's decision to hire Lennon. "The interpretation of contracts generally is subject to a *de novo* standard of review, but the factual findings that inform this interpretation are given deference on review and are to be reversed only where they are against the manifest weight of the evidence." *Wiczer v. Wojciak*, 2015 IL App (1st) 123753, ¶ 33. Likewise, "[w]hether a party to a contract rendered substantial performance is a question of fact, and the trial court's determination of that issue will not be disturbed unless it is against the manifest weight of the evidence." *LB Steel, LLC v. Carlo Steel Corp.*, 2018 IL App (1st) 153501, ¶ 37.

¶ 16    At the outset, we note that no provision of the parties' contract conditions Bluestone's entitlement to a placement fee on it having been a "motivating force" for Staff Management's decision to hire a candidate. Rather, the contract obligates Staff Management to pay Bluestone a placement fee if Staff Management "hire[s], directly or indirectly, for any position" a candidate referred to it by Bluestone, so long as the candidate is hired within one year of the date of referral. Staff Management does not dispute that Bluestone referred Lennon to it and that it hired Lennon within one year of the date of that referral. Nevertheless, Staff Management contends that Bluestone is not entitled to a placement fee under the contract because it failed to satisfy four additional criteria identified in *Snedden v. General Radiator Division of Chromalloy American Corp.*, 111 Ill. App. 3d 128 (1982), and *Vinzenz v. Hintzsche Fertilizer, Inc.*, 336 Ill. App. 3d 468 (2003). We need not decide whether the criteria identified in those cases are implicit

terms of the parties' contract because we conclude that, even if they are, the evidence at trial supports a finding that Bluestone satisfied them.

¶ 17    In *Snedden*, the defendant contacted the plaintiff recruiting firm seeking applicants for an open position. 111 Ill. App. 3d at 130. The recruiting firm submitted a list of five candidates to the defendants. *Id*. One of those candidates, Dale Bonnema, had recently accepted an offer of employment with another company, General Thermo, but told the recruiter that he would sit for an interview with the defendant as a courtesy. *Id.* The defendant conducted a short interview with Bonnema but did not offer him a job. *Id.* Several months later, an employee at General Thermo sent Bonnema's resume to the defendant after Bonnema expressed interest in working for the defendant. *Id.* After interviewing Bonnema again, the defendant hired him. *Id.* In a suit by the plaintiff to recover its standard placement fee from the defendant, the trial court heard evidence of an established custom in the recruiting industry "that an employer will pay a fee to a recruiter for any employee who is hired by the employer within one year of being referred to the employer by the recruiter" if four criteria are satisfied: "(1) the [recruiting] agency must have discussed the applicant with the employer; (2) the employer [must have] agreed to interview the applicant; (3) the applicant [must have] agreed to interview with the employer; and (4) the [recruiting] agency or the employer must have set the arrangements in motion for the interview." *Id.* at 131. In reversing the trial court's judgment for the defendant, the Fourth District held that the plaintiff recruiting firm was entitled to its standard placement fee under industry custom because it referred Bonnema to the defendant, the defendant agreed to interview Bonnema, and "an interview, perfunctory as it may have been, actually took place." *Id.* at 132.

¶ 18    The Second District applied the same industry custom in *Vinzenz*. There, in response to a request for applicants, the plaintiff recruiting firm sent the defendant the resume of a potential candidate, Larry Kakacek. 336 Ill. App. 3d at 470. The defendant advised the plaintiff recruiting firm that it was not interested in Kakacek and did not schedule an interview with him. *Id.* A few weeks later, a different recruiting firm sent Kakacek's resume to the defendant. *Id*. This time the defendant agreed to interview Kakacek and eventually hired him, thereafter paying a placement fee to the second recruiting firm. *Id.* The plaintiff recruiting firm sued to collect its placement fee for referring Kakacek to the defendant. *Id.* at 471. The trial court granted summary judgment for the defendant, and the Second District affirmed. The appellate court held that the plaintiff recruiting firm was not entitled to a placement fee because it "met only one of the four *Snedden* criteria." *Id*. at 475. Although the plaintiff discussed Kakacek with the defendant, it "did nothing to satisfy" the remaining criteria, such as arranging an interview between Kakacek and the defendant. *Id.*

¶ 19    Staff Management asserts that the facts here are "nearly identical" to those in *Vinzenz*. We do not find this contention persuasive. In *Vinzenz*, the plaintiff recruiting firm did nothing more than submit the candidate's resume to the defendant. Bluestone, by contrast, not only referred Lennon to Staff Management but also arranged for Staff Management to interview him. Moreover, Staff Management and Lennon both agreed to the interview and the interview actually took place. This case is thus far more like *Snedden*, where the appellate court found that the recruiting firm was entitled to a placement fee. Staff Management notes that Bluestone did not submit Lennon's resume or arrange his interview for the *program manager position* that Staff Management ultimately hired him to fill. Thus, according to Staff Management, Bluestone is not

entitled to a placement fee because it "was not the 'motivating force' in getting Gary Lennon a job at [Staff Management]." But the parties' contract states that a placement fee is due if Staff Management "hire[s]" a referred candidate "directly or indirectly, for any position." It does not require that Staff Management hire the candidate for the same (or even a similar) position for which Bluestone referred him. Nor does the contact or the case law support Staff Management's interpretation of the "motivating force" test. *Vinzenz* did not hold that a recruiting firm must have been the motivating force behind the employer's hiring decision, as Staff Management suggests, but rather "the motivating force in satisfying the [*Snedden*] criteria." *Vinzenz*, 336 Ill. App. 3d at 475. The evidence here was more than sufficient to establish that Bluestone was the motivating force in satisfying the *Snedden* criteria. We cannot say that the trial court's judgment for Bluestone was against the manifest weight of the evidence.

¶ 20    Finally, Staff Management contends that the trial court erred in awarding Bluestone prejudgment interest at a rate of 2.3% per month. We generally accord deference to a trial court's decision to award prejudgment interest and "will not disturb [its] findings of fact pertinent to prejudgment interest unless those findings are contrary to the manifest weight of the evidence." *Milligan v. Gorman*, 348 Ill. App. 3d 411, 416 (2004). Whether an award of prejudgment interest is legally authorized, however, presents a question of law that we review *de novo*. *Id.*

¶ 21    In actions at law, such as this breach of contract dispute, prejudgment interest is recoverable only if authorized by statute or the agreement of the parties. See *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago*, 234 Ill. 2d 446, 474 (2009); *Continental Casualty Co. v. Commonwealth Edison Co.*, 286 Ill. App. 3d 572, 579-81 (1997). Section 2 of the Interest Act authorizes prejudgment interest "for all moneys after

they become due on any bond, bill, promissory note, or other instrument of writing," 815 ILCS 205/2 (West 2018), including a contract. See *Kouzoukas*, 234 Ill. 2d at 476; *New Hampshire Insurance Co. v. Hanover Insurance Co.*, 296 Ill. App. 3d 701, 708 (1998). But the Interest Act sets the rate of prejudgment interest at 5% per year, see 815 ILCS 205/2 (West 2018), not 2.3% per month (which amounts to an annual interest rate in excess of 31%).[4] Thus, even if Bluestone were entitled to prejudgment interest under the Interest Act, that statute cannot support the exorbitant amount of interest awarded by the trial court. Regardless, as we previously noted, Bluestone waived its right to prejudgment interest under the Interest Act by expressly disclaiming reliance on the statute in the trial court. See *In re Estate of Feinberg*, 2014 IL App (1st) 112219, ¶ 115.

¶ 22    Bluestone's sole argument in the trial court (as it is on appeal) was that prejudgment interest was due at a rate of 2.3% per month because the invoice it sent to Staff Management provided for a monthly service charge in that amount on any overdue payment. But there is no evidence in the record that the parties agreed to those terms. The parties' contract obligated Staff Management to pay any required placement fee for a hired candidate within 30 days after the date of hire, but it made no provision for interest or service charges on late payments. At trial, Kruk merely testified that Bluestone sent Staff Management the invoice and tried to discuss the matter with several of its agents but received no response. There was no testimony or evidence that would support a finding that Staff Management agreed to pay any interest or service charge.

---

[4] At a rate of 5% per year, compounded monthly over a period of 30 months, the amount of prejudgment interest here would have been approximately $1,500, not the $10,761.31 that the trial court awarded.

Accordingly, the trial court's decision to award prejudgment interest based on the service charge included on the invoice was against the manifest weight of the evidence and must be vacated.

¶ 23                                    III. CONCLUSION

¶ 24     For the foregoing reasons, we vacate the circuit court's award of prejudgment interest but affirm its judgment in all other respects.

¶ 25     Affirmed in part and vacated in part.