(No. 37919.—

Roy Watts, Appellee, *vs.* Erich H. Fritz *et al.,* Appellants.

*Opinion filed November 26, 1963.*

Dunn, Stefanich & McGarry, of Joliet, (Daniel L. Kennedy, of counsel,) for appellants.

Herschbach & Tracy, of Joliet, (Wayne R. Johnson, of counsel,) for appellee.

Mr. Justice Hershey delivered the opinion of the court:

Plaintiff, Roy Watts, who, with his wife, owned lot 24 in Robert Bartlett's Spring Creek Woods Subdivision, filed suit in equity against defendants, Erich H. Fritz and Florence V. Fritz, his wife, the owners of lot 74 in said subdivision, praying in count I of their complaint for an injunction to restrain defendants from subdividing their lot 74 and from erecting more than one principal building on said lot and that the conveyances dividing said lot be declared null and void, and praying in count III for a declaratory judgment declaring that, by reason of the restrictive covenants imposed upon lot 74, defendants may not construct more than one principal building on lot 74 as originally platted. Count II prayed for other relief and on plaintiff's motion was dismissed.

After hearing before a master and upon the master's report, the circuit court of Will County entered a decree approving the report and denying objections thereto, and by its decree issued the injunction and entered declaratory judg-

ment restricting defendants from erecting more than one dwelling on lot 74 as originally platted, restricting defendant Florence V. Fritz, her agents or nominees, from erecting any building on the south 275 feet of lot 74, and declaring that defendants or their grantees may not construct more than one principal building upon lot 74 as originally platted.

In the original subdivision there were 107 lots of varied sizes, most of which are 165 feet in width and in length from 250 to more than 1,100 feet. There are no alleys in the subdivision and the lots have no means of ingress and egress other than to the front of the lot. Lot 74, as originally platted, was 165 feet in width and approximately 600 feet in length.

On August 4, 1960, the defendants divided their lot 74 into two parcels, the southerly part thereof being 275 feet in length. At the same time, defendants acquired the north 15 feet of lot 35 and part of lot 36, which gave them ingress and egress to the south 275 feet of lot 74.

On February 24, 1961, defendants contracted to sell the south 275 feet of lot 74 and the portions they owned of lots 35 and 36 to Maurice Barry and Jane N. Barry, his wife, who intend to build a dwelling house on said south 275 feet of lot 74.

The subdivision was platted in 1945, and various lots were sold by the subdivider, Robert Bartlett, and thereafter subdivided and have more than one house on a lot as originally platted. One of these subdivided lots is directly across the street from defendants' lot 74, and was subdivided and two houses built on it after plaintiff purchased his property. A majority of these subdivided lots were subdivided prior to August 4, 1960, when the defendants subdivided lot 74. Frank E. Merril, in charge of all the salesmen of Robert Bartlett, purchased three lots in the subdivision and subdivided them later.

At the time Spring Creek Woods Subdivision was platted the subdeveloper sold lots of various sizes and all of

the deeds to said lots contained the same restrictions or covenants. These were numerous and detailed. The master found that none of these restrictive covenants prohibited the further subdividing of the lots as originally platted, which finding the court approved. However, the master also found that when all of the restrictions are read as a whole and considered in relation to each other, they prohibited the construction of more than one house or dwelling place on a lot as originally platted.

The restrictive covenants primarily relied on are as follows:

"1. Subject to such of the following covenants as refer to the real estate herein described which shall run with the land and shall be in force and effect and shall be binding on all parties and all persons claiming under them until January 1, 1965, at which time said covenants shall automatically extend for successive periods of ten years unless by a vote of the majority of the then owners of the lots, it is agreed to change the said covenants in whole or in part.

"2. The principal building erected or placed on any lot in the subdivision must have a ground floor area of at least five hundred twenty (520) square feet exclusive of porches or attached garages. Out-buildings other than garages shall not be erected or placed nearer than one hundred (100) feet to the front lot line.

"3. No trailer, basement, tent, shack, garage or barn or other out-building erected on said premises shall at any time be used as a residence or business, temporarily or permanently, nor shall any residence of this character be permitted.

"4. Water wells shall be located and constructed in accordance with the standards set forth by the State Department of Public Health, the location being such that the wells will be reasonably protected from pollution by seepage from waste disposal systems on the same or adjacent lots. Such wells shall be constructed on the front one-half of said Lots.

"5. If the parties hereto, or any of them, or their heirs or assigns, shall violate or attempt to violate any of the covenants herein, it shall be lawful for any other person or persons owning any real property situated in said Development or Subdivision to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant and either to prevent him or them from so doing or to recover damages or other dues from such violation.

"6. It is an express condition of this conveyance that no part of the real estate herein described shall ever be conveyed or leased to any person who is not a Caucasian, and shall never at any time be used or occupied by any person who is not a Caucasian. If said real estate or any part thereof shall at any time be conveyed or leased to any person who is not a Caucasian, or shall at any time be used or occupied by any person who is not a Caucasian, then and in any such event all said real estate and all estate and interest therein shall forthwith revert to the Grantor or his heirs who may thereafter re-enter upon and enjoy the same as before the making of this conveyance."

It is well established that the primary purpose of the construction of a deed is to ascertain the intention of the parties, which is gathered by giving effect to every word and rejecting none if it can be done without violating any positive rule of law. (*Miller* v. *Ridgley*, 2 Ill.2d 223; *Brown* v. *Pierson*, 250 Ill. App. 214; *Leverich* v. *Roy*, 338 Ill. App. 248.) However, as we said in *Hutchinson* v. *Ulrich*, 145 Ill. 336 at 342, in approving the language of *Eckhart* v. *Irons*, 128 Ill. 582: "All doubts must be resolved in favor of natural rights, and against restrictions thereon. In this country real estate is an article of commerce, the uses to which it should be devoted are constantly changing as the business of the country increases, and as its new wants are developed; hence it is contrary to the well recognized business policy of the country to tie up real estate where the fee is conveyed, with restrictions and prohibitions as to its use, and hence, in the construction of deeds containing restrictions and prohibitions as to the use of property by a grantee, all doubts should, as a general rule, be resolved in favor of a free use of property, and against restrictions." This was also stated in *Curtis* v. *Rubin*, 244 Ill. 88. In *Henricks* v. *Bowles*, 20 Ill. App. 2d 148 at 151, the court again approved this rule and stated: "Restrictive covenants are strictly construed in favor of the full and unlimited legitimate use of property and, where there is any doubt, the matter must be resolved in favor of natural rights and against restrictions."

This case, like all other deed-construction cases and like

the cases above cited, must be determined from the language of the restrictions contained in the deed in question. Restrictions 2, 3 and 4 contain provisions concerning minimum building and sanitary standards which must be met in the erection of dwelling houses in the subdivision.

In considering whether the restrictions here prohibit the building of more than one dwelling house on a lot, it is evident that if the developer had so intended he could and would have placed in the deeds a clear and definite covenant or restriction expressly so stating. That he did not do so is practically conceded by both parties to this suit. It would also appear that he could and would expressly have provided that there was to be no splitting or subdividing of the original platted lots if none was to be done. In our opinion, he did not place any such express prohibitions in the deeds.

Plaintiff now contends that although the covenants in the deeds do not prohibit the splitting or subdividing of the original lot, yet they do prohibit the erection of more than one dwelling on any one lot as originally subdivided or on any part thereof as later subdivided. This also was the finding of the master and the decree of the lower court.

In support of his contention plaintiff relies on restriction 2 above set forth. The language of this restriction does not expressly so provide and in our opinion, applying the applicable rules of construction above stated, this restriction creates minimum building standards and uniform set-back lines and cannot be construed to prohibit more than one building or home on each lot as long as these minimum standards are met.

As has been contended by defendants, this construction of restriction 2 is further supported by the language of restriction 6 that: "It is an express condition of this conveyance that no part of the real estate herein described shall ever be conveyed or leased to any person who is not a Caucasian * * *. If said real estate or any part thereof shall at any time be conveyed or leased to any person who is not

a Caucasian * * *." While this restriction is no longer enforceable, yet it expresses the expectation of the developer that the lots may be subdivided.

It, therefore, is not plausible that he meant to limit only one dwelling or house to a lot when it was so subdivided. This contention of defendants has considerable merit and lends support to the rules of construction above stated.

Defendants make the further contention that while it is their position that there are no restrictions in the deed which prohibit subdividing the lots and placing more than one dwelling on a lot as originally platted, yet even if there were such a restriction, plaintiff has waived any right to enforce it by previous acquiescence in prior violations. The parties do not agree as to the facts concerning this matter. However, the evidence showed that there had been several subdividings of lots in the subdivision with the building of more than one dwelling on a lot as originally platted. Plaintiff, himself, acknowledged that one such subdividing and building took place across the street from him after he purchased his property. The developer's man in charge of his salesmen himself subdivided at least three lots and these subdivided lots had homes built on them. There is no showing that plaintiff took any action to prevent the subdividing of the lot across the street from him or the building of a dwelling on it other than to talk to the developer and possibly an attorney. No positive preventative action was taken.

Minor violations of a restriction will not prohibit the subsequent enforcement of it. (*Henricks* v. *Bowles,* 20 Ill. App. 2d 148.) However, where there has been acquiescence in prior violations of the very substance of a general plan or particular restriction, the plaintiff will be held to have waived any right he may have had to enforce it. Thus, in *Wallace* v. *Hoffman,* 336 Ill. App. 545, at 554, the court said: "The law is well settled that even where a general plan is shown the restrictions under the plan will not be

enforced where violations have been acquiesced in." To the same effect are *McGovern* v. *Brown,* 317 Ill. 73 and *Curtis* v. *Rubin,* 244 Ill. 88. It appears to us that even if the restrictions here were construed to prohibit the subdividing and the building thereon, yet plaintiff has so acquiesced in prior violations as to be unable to enforce any such restriction.

For the reasons that under proper applicable rules of construction there was no restriction prohibiting subdividing the lots as originally platted or of building more than one dwelling on a lot as subdivided and that plaintiff had acquiesced in such subdividing and building of more than one dwelling on a lot, the decree of the circuit court is reversed.

*Decree reversed.*