MONICA J. SADLER, Plaintiff-Appellant, v. WILLIAM V. CREEKMUR, Indiv. and as Trustee, *et al.*, Defendants-Appellees.

Third District    No. 3—03—0039

Opinion filed December 23, 2004.—Rehearing denied January 26, 2005.

1030

1031

O'MALLEY, P.J., dissenting.

Peter C. Fieweger (argued), of Katz, Huntoon & Fieweger, P.C., of Rock Island, for appellant.

Paul Mangieri, State's Attorney, of Galesburg, for appellee County of Knox.

R. Michael Henderson (argued) and Laura A. Petersen, both of Quinn, Johnston, Henderson & Pretorius, Chtrd., of Peoria, for appellee Michael Massie.

David Simpson (argued), of Hattery, Simpson & West, of Galesburg, for appellees William V. Creekmur and Nira Del Creekmur.

John W. Robertson (argued) and Daniel S. Alcorn, both of Stoerzbach, Morrison, Robertson, Wilcox & Alcorn, of Galesburg, for other appellees.

JUSTICE BOWMAN delivered the opinion of the court:

In this matter transferred from the Appellate Court, Third District, plaintiff, Monica J. Sadler, appeals from orders entered in the

circuit court of Knox County dismissing her second amended complaint with respect to certain defendants, granting summary judgment in favor of other defendants, and entering sanctions against her pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). Sadler argues on appeal that: (1) the trial court erred in interpreting the restrictive covenant at issue, (2) genuine issues of material fact preclude the dismissal of her complaints and the entry of summary judgment against her, (3) her claims against defendants were not moot, (4) the trial court erroneously denied her request for a temporary injunction, (5) the trial court improperly granted defendants' dispositive motions while her motion for substitution of judge was pending, and (6) the trial court abused its discretion in sanctioning her.

## I. BACKGROUND

This dispute involves certain real property located in the Forest Ridge subdivision of the Oak Run community, a group of eight subdivisions, in Knox County. Sadler owned, in fee simple, lot 107 Forest Ridge, and also held an undivided interest in lots 195, 536, and 249 Forest Ridge. Defendants William and Nira Del Creekmur were the beneficial owners of lot 194 Forest Ridge, which was held in two trusts. The Creekmurs had a house on their lot, where they resided. At all times relevant to this litigation, the Forest Ridge subdivision was governed by a declaration of restrictive covenants. Defendant Oak Run Property Owners Association (Association) was charged with maintaining and administering the community properties and facilities and enforcing the restrictive covenants.

In January 1997, the Creekmurs recorded a plat that subdivided lot 194 into two lots called Sandy Ridge lot 1 and Sandy Ridge lot 2. They intended to build another residence on the subdivided lot and, toward that end, obtained a building permit (County building permit) from the Knox County zoning administrator. The Creekmurs also obtained a building permit (Association building permit) from the Association's architectural control committee.

Sadler objected to the subdivision of lot 194 and to allowing the Creekmurs to build another house on the subdivided lot. She contended that the subdivision of the lot violated the Forest Ridge restrictive covenants. Article VII, section 1, of the restrictive covenants provides in relevant part:

> "No building shall be erected, altered, placed or permitted to remain on any lot other than one single family dwelling not exceeding two and one-half stories in height, and one private garage or boathouse, or combination garage and boathouse for family automobiles and boats, in keeping with the dwelling so erected."

The covenants did not define "lot."

Also in existence was a sanitary district ordinance prohibiting a sewer tap-on or private sewage treatment system on any Forest Ridge lot other than an originally platted lot. Based on this ordinance, the sanitary district denied the Creekmurs' request for a permit to tap on the proposed new residence to the sewer system. The Creekmurs also sought a permit to install a private septic system on their lot, but the Knox County zoning administrator denied their request. Because the Creekmurs did not have the necessary permit from the sanitary district, the Association's architectural control committee suspended the Creekmurs' Association building permit on April 12, 1997.

On May 24, 1997, the Creekmurs agreed to sell Sandy Ridge lots 1 and 2 to defendants Peter and Chantal Williams, with the intention that the Williamses would acquire the former lot 194 as two separate parcels of land, each able to contain a single-family home.

On June 12, 1997, Sadler filed a verified petition for declaratory and injunctive relief (petition) against the Creekmurs, the Williamses, and the Association, alleging that the restrictive covenant prohibited the Creekmurs from subdividing their property and building a second residence on it. She sought declarations that the Creekmurs' acts of subdividing their property and recording the subdivision were illegal, null, and void, and that the County building permit was illegal, null, and void. She also sought a temporary restraining order and a preliminary injunction prohibiting the Creekmurs from conveying any interest in lot 194 and from taking any action to build a second house on lot 194. She further requested that the court enter a permanent injunction, requiring the Creekmurs to take all steps necessary to vacate the subdivision and prohibiting them from building on lot 194.

In response to Sadler's petition, the Association filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1996)), arguing that the dispute had become moot because the Creekmurs intended to vacate the plat of subdivision and the Williamses did not oppose vacating the plat. The trial court determined that the case was not yet moot, but granted the Association's motion to dismiss without prejudice because Sadler did not request any declaratory or injunctive relief as to the Association. The court denied Sadler's request for a temporary restraining order and preliminary injunction, on the ground that Sadler had not suffered any immediate or irreparable harm.

On July 3, 1997, Sadler conveyed by deed her interest in lot 195 Forest Ridge, which adjoined the Creekmurs' property, to a nonparty. On July 14, 1997, she filed a *lis pendens* against approximately 2,600 lots in all 8 Oak Run subdivisions, but the court limited the *lis pendens* to the Creekmur property.

Also on July 14, 1997, the Creekmurs presented to the Knox County zoning administrator a petition to vacate the Sandy Ridge subdivision plat. On July 17, 1997, the Association adopted a resolution providing that, prospectively, it would not provide permits for more than one residence per original lot. On July 19, 1997, the Williamses and the Creekmurs agreed to terminate the contract for the sale of lots 1 and 2 Sandy Ridge. On August 6, 1997, the executive land use committee of the Knox County Board held a hearing and recommended to the full Knox County Board that it should vacate the Sandy Ridge plat. At a meeting before the Knox County Board on August 20, 1997, Sadler's attorney spoke against vacating the plat. The Knox County Board took no action on the recommendation to vacate the plat. On August 26, 1997, Knox County filed an application to intervene in the instant litigation, which the court granted.

Sadler filed an amended petition on August 28, 1997, without leave of court, in which she added as defendants all individual members of the Association's board of directors, namely, defendants Robert Brenkman, Tom Sacco, Dale E. Sundberg, Merle G. Huff, A. Dean Dearing, James L. Kuntz, and Gene Shrader (Board). Sadler also sought relief from defendants Jim Lair and Bill Cain, who were members of the Association's architectural control committee, as well as Board attorney Michael Massie. The Association moved to dismiss the amended petition pursuant to section 2—619(a)(9) of the Code, arguing that the events following the filing of Sadler's petition rendered her claims moot. At that time, the Creekmurs and Williamses still had pending motions to dismiss on file.

The trial court conducted hearings on the parties' motions to dismiss in September and November 1997. On January 6, 1998, it entered an order dismissing with prejudice Sadler's claims against the Williamses, her claims for declaratory and injunctive relief against the Association, and her claim for injunctive relief against the Creekmurs. The court granted Sadler leave to file an amended complaint.

On March 3, 1998, Sadler filed a verified second amended complaint. Count I sought a declaration that the Creekmurs' subdivision of lot 194 violated the restrictive covenants and was null and void. It also sought a declaration that the County building permit was illegal because it violated the restrictive covenants. Count II sought damages against the Creekmurs for the material breach of the restrictive covenants. Count III alleged breach of contract against the Association and the Board for refusing to enforce the restrictive covenants. Count IV alleged a breach of fiduciary duty by the Association and the Board. Count V alleged a breach of fiduciary duty by defendants Lair and Cain in approving the Creekmurs' building

permit. Count VI alleged that attorney Massie failed to enforce the restrictive covenants, gave erroneous legal advice to the Board, and had a conflict of interest because he owned lots in another Oak Run subdivision.

The Creekmurs moved to dismiss counts I and II of the second amended complaint pursuant to section 2—619(a)(9) of the Code, arguing mootness and that the subdivision of lot 194 did not, by itself, violate the restrictive covenants. In a letter decision dated August 18, 1998, the trial court granted the Creekmurs' motion to dismiss and stated that the restrictive covenants did not prohibit subdivision of Forest Ridge lots but did prohibit building a second residence on a subdivided lot. (For reasons not made clear by the parties, the order granting the Creekmurs' motion to dismiss was not entered until September 13, 1999.)

Defendant Massie also filed a section 2—619(a)(9) motion to dismiss, arguing that he owed no duty to Sadler because she was not his client. The trial court agreed with Massie and granted his motion to dismiss.

The Association, along with its individual Board members and Lair and Cain, moved for summary judgment, arguing that (1) the "business judgment rule" barred Sadler's claims of breach of fiduciary duty, (2) Lair and Cain owed no duty to Sadler, and (3) as a matter of law, Sadler was not entitled to recover attorney fees. The trial court granted summary judgment for these defendants.

Defendants subsequently filed motions for Rule 137 sanctions against Sadler and her attorney, Barney Olson II. Sadler filed a cross-motion for sanctions against defendants. The Creekmurs later withdrew their motion for sanctions. The trial court determined that sanctions against Sadler were warranted because all of the proceedings that took place after August 20, 1997, lacked a reasonably objective basis. The court did not sanction Sadler's attorney. The court awarded attorney fees in the amount of $97,854 to the Association and the Board. It also awarded Massie attorney fees in the amount of $44,990.19. The court denied Sadler's motion to reconsider, and this appeal ensued.

## II. ANALYSIS

### A. Denial of Temporary Restraining Order and Injunctive Relief

■ Sadler asserts that the trial court erred in denying her petition for a temporary restraining order. We lack jurisdiction over this issue. The trial court entered the order denying Sadler's petition for a temporary restraining order on June 27, 1997. Supreme Court Rule 307(d) provides that a petition to appeal the denial of a temporary

restraining order shall be filed within two days of the entry or denial of the order from which review is sought. 188 Ill. 2d R. 307(d). Sadler did not file a petition within the time specified in Rule 307(d). Accordingly, we do not have jurisdiction over this issue. See *People ex rel. Sherman v. Cryns*, 321 Ill. App. 3d 990, 992-93 (2001).

Sadler also challenges the denials of her claims for injunctive relief. However, she failed to timely appeal from the order dismissing these claims, as required by Supreme Court Rule 307(a) (210 Ill. 2d R. 307(a)). The order dismissing Sadler's claims for injunctive relief against the Association, the Board, and the Creekmurs was entered on January 6, 1998. Pursuant to Supreme Court Rule 307(a), Sadler was required to file a notice of appeal within 30 days of the entry of the order refusing to enter an injunction. Because she failed to do so, we have no jurisdiction over those issues dealing with the denial of injunctive relief.

In addition, Sadler contends that the trial court erroneously denied her a hearing on her request for a preliminary injunction. Sadler has not identified an order denying a hearing, nor has she provided the court with any citations to the record that would illuminate us on this issue. Accordingly, she has waived this issue for purposes of appeal. *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 401 (1987) (arguments that are insufficiently presented do not warrant consideration on appeal).

### B. Interpretation of the Restrictive Covenant

The interpretation of the subject covenant relates to several remaining issues on appeal, including the dismissal of Sadler's claims against the Association, and therefore we will begin by addressing this issue. The trial court determined that the restrictive covenant did not prohibit the subdivision of an original lot. For the following reasons, we agree with the trial court's interpretation.

■ Restrictions on the use of property conveyed in fee are not favored, but courts will enforce restrictive covenants if they are reasonable, clear, definite, and not contrary to public policy. *Sherwood v. Rigsby*, 221 Ill. App. 3d 260, 261 (1991). The interpretation of a restrictive covenant is a question of law. See *Dam, Snell & Taveirne, Ltd. v. Verchota*, 324 Ill. App. 3d 146, 154 (2001). When interpreting a covenant, a court must give effect to the parties' actual intent at the time the covenant was made. *Vandelogt v. Brach*, 325 Ill. App. 3d 847, 853 (2001). As with any other contract, the terms must be given their ordinary and natural meaning when they are clear and unambiguous. *Dam*, 324 Ill. App. 3d at 154. When there is no ambiguity, there is no

need to inquire into the intention of the parties. *Dam*, 324 Ill. App. 3d at 154.

With the above principles in mind, we review the language of the covenant at issue. It states:

> "All lots not otherwise specifically designated upon a recorded plat or recorded Declaration by Developer shall be used for residential purposes only, and no business, commercial or manufacturing enterprise shall be conducted on said premises. *No building shall be erected, altered, placed or permitted to remain on any lot other than one single family dwelling* not exceeding two and one-half stories in height, and one private garage or boathouse, or combination garage and boathouse for family automobiles and boats, in keeping with the dwelling so erected." (Emphasis added.)

■ Sadler relies heavily on authority from other jurisdictions for the proposition that a restriction prohibiting the construction of more than one residence per lot also prohibits a lot owner from subdividing the lot. She contends that these foreign cases control our interpretation of the covenant. We disagree. Decisions by courts from other states are not binding on courts of this state. *Skipper Marine Electronics, Inc. v. United Parcel Service, Inc.*, 210 Ill. App. 3d 231 (1991). When there is Illinois case law directly on point, we need not look to other states for guidance. *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736 (2000). In this case, we find it unnecessary to consider the foreign cases Sadler cites, as Illinois law adequately addresses the issues presented.

■ Illinois courts have declined to read a restriction on subdivision into a covenant, based on the reasoning that a developer who intended to prohibit subdivision of the original lots would have expressly included such a restriction. See *Watts v. Fritz*, 29 Ill. 2d 517, 522 (1963). In *Watts*, the plaintiffs sought to restrain the defendants from subdividing their lot and constructing an additional building on it. The court held that the plaintiffs could not do so, because the restrictions did not expressly prohibit subdividing lots or building another dwelling on a subdivided lot and because the plaintiffs had acquiesced in previous violations of the restrictions. In analyzing the restrictions, the court noted that " '[r]estrictive covenants are strictly construed in favor of the full and unlimited legitimate use of property and, where there is any doubt, the matter must be resolved in favor of natural rights and against restrictions.' " *Watts*, 29 Ill. 2d at 521, quoting *Henricks v. Bowles*, 20 Ill. App. 2d 148, 151 (1958). With respect to the specific restrictions at issue in *Watts*, the court reasoned as follows:

> "[I]t is evident that if the developer had so intended he could and would have placed in the deeds a clear and definite covenant or

restriction expressly so stating. That he did not do so is practically conceded by both parties to this suit. It would also appear that he could and would expressly have provided that there was to be no splitting or subdividing of the original platted lots if none was to be done. In our opinion, he did not place any such express prohibitions in the deeds." *Watts*, 29 Ill. 2d at 522.

*Watts* differs somewhat from the case at bar; in *Watts*, there was no express restriction on constructing more than one residence per lot and the plaintiffs were found to have acquiesced in prior violations of the covenants. However, the message in *Watts* regarding the interpretation of covenants is clear: restrictions on the use of property must be expressly stated in order to be given effect.

The court in *Paquette v. Coble*, 271 Ill. App. 3d 1110 (1995), reached a similar conclusion. In that case, the court interpreted a restrictive covenant that provided that no more than one single-family residence could be built on any parcel of land having an area of less than $2^1/_4$ acres. *Paquette*, 271 Ill. App. 3d at 1111. The issues in *Paquette* were whether the previous splitting of one of the subdivision's lots so changed the character of the area as to render the restrictive covenant unenforceable, and whether the restrictive covenant at issue prohibited the plaintiffs from splitting their lot. *Paquette*, 271 Ill. App. 3d at 1111. In interpreting the covenant's language, the court concluded that it did not expressly prohibit subdivision. *Paquette*, 271 Ill. App. 3d at 1114. Rather, it prohibited only building more than one single-family dwelling on a lot smaller than $2^1/_4$ acres. *Paquette*, 271 Ill. App. 3d at 1114.

In the instant case, it is undisputed that the restrictive covenants do not expressly prohibit subdivision of an original lot. Sadler urges, however, that such a prohibition is implicit in light of (1) the developer's stated intent to restrict Forest Ridge to residential uses, (2) the sanitary district ordinance allowing only one residence per original Oak Run lot to tap on to the sewer system, and (3) the provision of the Forest Ridge declarations requiring each lot owner to hook up to the sanitary district sewer system. She fails to acknowledge or address, however, the authority in *Watts* and *Paquette*, which instructs that, to be enforceable, restrictions on the use of property must be expressly stated. In our view, this authority controls the outcome of this case. Nothing in the particular covenant at issue or in the declarations as a whole expressly prohibits the subdivision of an original lot. Rather, only the construction of more than one single-family dwelling per "lot" is forbidden. Accordingly, we hold that the covenant at issue did not prohibit the Creekmurs from subdividing their lot.

Next, we consider separately defendants' dispositive motions.

## C. The Creekmurs

■ By a letter ruling dated August 17, 1998, the trial court dismissed counts I and II of Sadler's second amended complaint, which were directed against the Creekmurs. Count I sought declarations that (1) the Creekmurs' acts of subdividing their land and recording the subdivision were illegal, null, and void, and (2) the County building permit issued to the Creekmurs was null and void. Count II sought attorney fees. The Creekmurs moved to dismiss these counts pursuant to section 2—619(a)(9) of the Code. As to count I, the Creekmurs argued that they had forfeited their building permit and had filed a petition to vacate the Sandy Ridge plat. Therefore, they argued, Sadler's claims against them were moot. The Creekmurs further argued that the clear language of the restrictive covenant did not expressly prohibit subdivision. With respect to count II, the Creekmurs argued that Sadler's breach of covenant claim was moot and that there was no legal basis for her claim for attorney fees.

The court dismissed count I because the Creekmurs' acts were not prohibited by the restrictive covenant. Based on this interpretation, the court also dismissed Sadler's breach of contract claim.

The purpose of a section 2—619 motion to dismiss "is to afford litigants a means to dispose of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a jury trial." *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). A court may dismiss a cause of action pursuant to section 2—619(a)(9) when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 2002). When determining a section 2—619 motion, a court takes all well-pleaded facts in the complaint as true. *Petty v. Crowell*, 306 Ill. App. 3d 774, 776 (1999). We review *de novo* the granting of a section 2—619 motion. *Petty*, 306 Ill. App. 3d at 776.

Sadler contends that genuine issues of material fact exist that preclude the dismissal of her cause of action against the Creekmurs. We disagree. Contrary to Sadler's assertions, the argument that "case law prohibited subdivision of Lot 194" is not a question of fact. More importantly, we have concluded that the restrictive covenant at issue did not bar the Creekmurs from subdividing their original lot. For this reason, the Creekmurs are entitled to judgment as a matter of law on the claims based on the subdivision of their lot.

Further, Sadler's claims relating to the Creekmurs' building permit or their intent to build a second residence on their lot became moot early on in the proceedings. An issue is moot if the parties'

interests and rights are no longer in controversy and the resolution of the issue will have no practical effect. *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 376 (2004). An action will be dismissed as moot once the plaintiff has secured what was originally sought. *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 782 (1999). While the mere voluntary cessation of allegedly unlawful conduct cannot moot a case unless it is clear that the wrongful behavior could not reasonably be expected to recur (*City of Chicago v. Beretta U.S.A. Corp.*, 337 Ill. App. 3d 1, 22 (2002) (supplemental opinion)), a court should not resolve a question just to set precedent or to provide guidance for future actions (*People ex rel. Ulrich v. Stukel*, 294 Ill. App. 3d 193, 198 (1997)).

In their answer to Sadler's original petition, which was filed on July 25, 1997, the Creekmurs averred that (1) they no longer had any desire or intention to have two residences on their lot, and (2) they had filed a petition to vacate the plat of subdivision. As such, the Creekmurs did not merely temporarily cease trying to build a second house but, rather, took the affirmative action of trying to vacate the subdivision. As stated, it was Sadler's attorney who asked the Knox County Board not to vacate the plat. The Creekmurs and the Williamses had additionally terminated their contract for the sale of the land. It is also undisputed that the Creekmurs' Association building permit had been suspended, and they had no permit from the sanitary district. Thus, any claim related to the building of a second residence on the Creekmur lot was purely hypothetical by the time the court decided the Creekmurs' motion to dismiss.

## D. The Association and the Board

### 1. Motion to Dismiss

On January 6, 1998, the court dismissed Sadler's claims seeking declaratory and injunctive relief against the Association. As we have already determined that we do not have jurisdiction over the claim for injunctive relief, we consider only whether the dismissal of the claim for declaratory relief was proper. The court determined that this claim was moot. We need not address the mootness issue. Because we may affirm the judgment of the trial court on any ground warranted (see *People ex rel. Waller v. 1990 Ford Bronco*, 158 Ill. 2d 460, 463 (1994)), we hold that the dismissal of Sadler's claims against the Association for declaratory relief was proper based on our interpretation of the restrictive covenant.

By way of her declaratory judgment action, Sadler sought a judicial determination that the restrictive covenants prohibited the subdivision of original Forest Ridge lots. She wanted this interpretation to be

binding on the Association. In light of our conclusion that the restrictive covenants did not prohibit the subdivision of original lots, Sadler's claim for declaratory relief is barred, and the Association is entitled to judgment as a matter of law.

## 2. Second Amended Complaint

■ The trial court granted summary judgment in favor of the Association and the Board on counts III and IV of Sadler's second amended complaint. Count III sought money damages for the Board's alleged failure to enforce the restrictive covenant against the Creekmurs. Count IV alleged that the Board breached its fiduciary duty to Oak Run property owners by failing to enforce the restrictive covenants.

The court ruled, with respect to count III, that the "business judgment rule" applied to the Board's decisions and that Sadler presented no evidence to rebut the presumption that the Board acted on an informed basis, in good faith, and with the honest belief that its actions were taken in the best interest of the Association. With respect to count IV, the court concluded that Sadler failed to allege any competent evidence that raised a genuine issue of material fact as to whether the Board breached its fiduciary duty.

Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 2002); *Robidoux v. Oliphant*, 201 Ill. 2d 324 (2002). Our review of an order granting summary judgment is *de novo. Vinzenz v. Hintzsche Fertilizer, Inc.*, 336 Ill. App. 3d 468, 471 (2003). Sadler maintains that genuine issues of material fact exist regarding whether the Association and the Board breached their fiduciary duties by refusing to enforce the restrictive covenants. The Board asserts that, pursuant to the "business judgment rule," it is not liable as a matter of law.

Because we have determined that the restrictive covenant did not prohibit the subdivision of original lots, the Association and the Board cannot, as a matter of law, be said to have breached or refused to enforce the covenants. Accordingly, they are entitled to summary judgment on the second amended complaint.

We further note that there was no legal basis for Sadler's claim for attorney fees. She asserts that she was entitled to such fees pursuant to article VII, section 7, of the declaration of restrictive covenants, which states that "[a]ny owner of real property in said plat of Forest Ridge Subdivision shall have the right to prosecute any proceedings at law or in equity against any person or persons violating or attempting

to violate any covenant contained herein, either to prevent him or them from doing so or to recover damages or other dues for such violations." Sadler does not seem to dispute that the declarations do not provide a basis for recovering attorney fees. See *Bertuli v. Gaull*, 215 Ill. App. 3d 603, 604-05 (1991) (absent an explicit use of the terms "attorney fees" and "court costs" in a contract, the court will not infer them and will not allow their recovery). Rather, Sadler argues that she should be allowed to recover attorney fees because the Association's and the Board's conduct was of an "active, tortious nature." In *Bartsch v. Gordon N. Plumb, Inc.*, 138 Ill. App. 3d 188, 205 (1985), the court held that a party who was forced to initiate litigation to preserve property rights in real estate due to the wrongful acts of another could recover attorney fees from the party whose conduct was wilful, wanton, malicious, oppressive, or at least of an active, tortious nature.

In her argument to this court, Sadler fails to identify any tortious conduct by the Association or the Board. While they initially disagreed with her as to the interpretation of the restrictive covenant, mere disagreement does not constitute "active, tortious conduct." Thus, even if we agreed with Sadler on the meaning of the restrictive covenant, she would not be entitled to recover attorney fees from the Association.

## E. Lair and Cain

■ The court also granted summary judgment in favor of defendants Lair and Cain on count V of Sadler's second amended complaint. Sadler alleged that, as the members of the architectural control committee who approved the Creekmurs' proposed construction plans, they breached their fiduciary duties to the lot owners by failing to enforce the restrictive covenants. The court held that, as the members of a subcommittee appointed by and answerable to the Board, Lair and Cain owed a fiduciary duty only to the Board. It further held that, because the permit issued to the Creekmurs had been suspended, any action relating to the issuance of the permit was moot.

Sadler offers no authority for the proposition that defendants Lair and Cain owed her a duty. We will not consider issues that are not properly briefed. *Spinelli*, 118 Ill. 2d at 401. Thus, we affirm the trial court's entry of summary judgment on count V of the second amended complaint.

## F. Attorney Massie

■ Sadler alleged in count VI of her second amended complaint that Massie, the Board's attorney, is liable for (1) advising the Board to refuse to enforce the restrictive covenant, (2) inducing the Board to

breach its fiduciary duties, and (3) deliberately giving misleading legal advice. Sadler further alleged that Massie had a conflict of interest because he owned a tract of land in a nearby subdivision, which he could allegedly subdivide and then sell. Massie moved to dismiss count VI, and the court granted his motion, concluding that Sadler had no standing to bring her claim because she was not Massie's client.

On appeal, Sadler has not established any issues of fact that would give rise to either an attorney-client relationship or a fiduciary duty owed by Massie to her. An attorney can be negligent only to persons to whom he or she owes a duty. *Schechter v. Blank*, 254 Ill. App. 3d 560, 563 (1993). Such a duty exists when the parties stand "in such a relationship to one another that the law imposes upon the defendant 'an obligation of reasonable conduct for the benefit of the plaintiff.' " *Schechter*, 254 Ill. App. 3d at 563, quoting *First National Bank v. Califf, Harper, Fox & Dailey*, 193 Ill. App. 3d 83, 85 (1989). Moreover, attorneys owe a duty of care only to their clients, not to third parties. *Schechter*, 254 Ill. App. 3d at 563. It is undisputed that Massie was the attorney for the Board, not Sadler. Sadler has not presented any facts establishing that Massie owed her any duty.

We also reject Sadler's argument that she alleged a cause of action against Massie for civil conspiracy. This argument fails for two reasons. First, it was not raised in the trial court and, therefore, it is waived. *Schechter*, 254 Ill. App. 3d at 563. Second, waiver notwithstanding, Sadler has presented no facts that would support a cause of action for civil conspiracy.

Conspiracy is an intentional tort that requires proof that a defendant knowingly and voluntarily participated in a scheme to commit an unlawful act or a lawful act in an unlawful manner. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999). While Sadler's argument is replete with speculation insinuating that Massie wanted to allow the subdivision of the Creekmurs' lot so that he could profit by taking similar action with his own property, there are absolutely no facts that would support Sadler's theory. Consequently, we affirm the dismissal of count VI of the second amended complaint.

### G. Claims of Judicial Impropriety

During the proceedings below, Sadler filed two motions for substitution of the trial judge for cause. The first motion asserted that the trial judge was prejudiced against her and was predisposed to make rulings against her. The second asserted that the trial judge had formerly worked for a law firm that represented the Oak Run developer. Both of the motions were denied.

Sadler contends on appeal that the trial judge, Harry C. Bulkely,

acted improperly by ruling on dispositive motions while her second motion for a change of judge was pending. What Sadler neglects to mention, however, is that on July 28, 1998, her counsel sent the court a letter requesting decisions on the summary judgment motions pursuant to Ninth Judicial Circuit Rule G—11, which provides that a ruling on a motion shall be made within 90 days of when the court took the motion under advisement. 9th Judicial Cir. Ct. R. G—11 (eff. August 1, 1989). The letter stated that Sadler would petition the chief judge to withdraw the proceedings and reassign the case to another judge "unless a decision is made in accordance with Rule G—11." According to the trial court's letter opinion, it had intended to wait to rule on the summary judgment motions until after a ruling had been made on Sadler's second motion for substitution of judge. However, the court took the letter from Sadler's counsel to indicate that Sadler waived any objection to it rendering a decision on the motions while the motion to remove was pending.

Sadler cannot have it both ways. She cannot ask the court to decide motions that it had taken under advisement and later complain that the court should not have rendered that decision. Even if the court erred in deciding dispositive motions while the motion for removal was pending, a party cannot claim error when it induced the trial court's mistake. *Stephens v. Taylor*, 207 Ill. 2d 216, 222 (2003). Thus, this claim of error lacks merit.

## H. Sanctions

The Association, the Board, and Massie filed motions for sanctions against Sadler pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). The Creekmurs also filed a motion for sanctions, but later withdrew it. Defendants argued that Sadler knowingly made false allegations against them, made legal arguments that lacked any objectively reasonable basis, and conducted the litigation for the purposes of harassment and unnecessarily increasing the costs. Sadler filed a voluminous response to defendants' motions and filed her own motion for sanctions against defendants. The trial court denied Sadler's motion for sanctions but awarded sanctions against Sadler and in favor of defendants.

Sadler argues that the trial court's award of sanctions against her was improper because (1) her pleadings were well grounded in fact and supported by existing law, (2) the court failed to hold evidentiary hearings on the motion for sanctions, (3) the court failed to require defendants to show that their fees were reasonable, (4) the court based its award of sanctions on improper grounds, and (5) the court failed to articulate the reasons for awarding sanctions solely against Sadler.

A trial court may impose sanctions against a party or his counsel for filing a pleading, motion, or other paper that is not well grounded in fact, is not warranted by existing law or lacks a good-faith basis for the extension, modification, or reversal of existing law, or is interposed for an improper purpose. 155 Ill. 2d R. 137. The purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits, not to penalize parties and their attorneys for zealous but unsuccessful pursuit of claims. *Whitmer v. Munson*, 335 Ill. App. 3d 501, 513-14 (2002). We must strictly construe the rule because it is penal in nature. *Whitmer*, 335 Ill. App. 3d at 514.

We apply an abuse-of-discretion standard when reviewing a trial court's decision on a motion for sanctions. *Whitmer*, 335 Ill. App. 3d at 514. An abuse of discretion occurs only if no reasonable person could agree with the trial court's ruling. *Whitmer*, 335 Ill. App. 3d at 514. If reasonable people would differ as to the propriety of the court's decision, then we cannot say that the court abused its discretion. *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074 (1995). Our primary consideration on review is "whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts." *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244 (2000).

Additionally, although a reviewing court may generally affirm a trial court's ruling on any ground supported by the record, regardless of the reasoning employed by the trial court (see, *e.g.*, *Waller*, 158 Ill. 2d at 463), this proposition has not been applied to rulings involving sanctions. See *People v. Miller*, 51 Ill. 2d 76, 78 (1972); *Smith v. City of Chicago*, 299 Ill. App. 3d 1048, 1052 (1998). In *Miller*, our supreme court stated that a direct contempt order may be sustained only upon the ground on which it was imposed, "for otherwise a contempt judgment might be affirmed in a reviewing court upon the basis of conduct which the trial court had found inoffensive." *Miller*, 51 Ill. 2d at 78. *Smith* applied this rule to the review of a sanction for a party's violation of a pretrial discovery order, emphasizing that the determination of an appropriate sanction is circumstance-specific and that the trial court has the initial discretion to impose such a sanction. *Smith*, 299 Ill. App. 3d at 1052.

As with other types of sanctions, Rule 137 gives the trial court the discretion to impose sanctions, and the rule also requires that the trial court provide an explanation (155 Ill. 2d R. 137) so that a reviewing court can conduct an informed and reasoned review of the sanction decision (*Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 513 (2001)). Therefore, we conclude that, as in *Miller*

and *Smith*, we may affirm the imposition of sanctions only on the grounds specified by the trial court.

Here, the trial court indicated in its letter opinion of May 2, 2002, that it had made extensive factual findings throughout the litigation, which it adopted as the law of the case for purposes of the motions for sanctions. Those findings include the following:

> "On 12 June 1997, this action was commenced by Sadler, seeking a temporary restraining order and preliminary injunction restraining the Creekmurs from conveying the property or taking any action to develop or build on the premises, a permanent injunction ordering the Creekmurs to take all steps necessary to vacate the subdivision and to refrain from taking any action to build on the premises, and declaratory judgment that the acts of the Creekmurs in subdividing their land and the building permit issued by the Knox County Zoning Department were illegal, null and void. The request for a temporary restraining order was denied when the court found the plaintiff failed to show immediate and irreparable injury if it were denied. No ruling was made on the request for a preliminary injunction.
>
> On 3 July 1997, Sadler conveyed by deed to a non-party her interest in Lot 195, Forest Ridge.
>
> On 14 July 1997, the Creekmurs presented a Petition for Vacation of the Sandy Ridge Subdivision plat to the Knox County Zoning Administrator.
>
> On 17 July 1997, the Oak Run Property Owners Association (O.R.P.O.A.) adopted a resolution which held that prospectively it will not provide permits for more than one residence per original lot. On 19 July 1997, the Williams and Creekmurs agreed to terminate the contract for the sale of Lots 1 and 2 Sandy Ridge. On 6 August 1997, the Executive Land Use Committee of the Knox County Board held a hearing and recommended to the full Knox County Board that the Sandy Ridge plat should be vacated. On 20 August 1997, after Sadler's attorney spoke against vacating the plat and the attorneys for the Creekmurs and O.R.P.O.A. spoke in favor of vacating the plat, the Knox County Board took no action on the recommendation."

The trial court then found that Sadler's lawsuit sought to keep the Creekmurs from "selling off part of their lot for construction of another house." The trial court further found that Sadler accomplished this objective by August 20, 1997, by which time Oak Run had suspended the Creekmurs' building permit, the Creekmurs had indicated their willingness to vacate the plat and had petitioned the Knox County Board to do so, and the Association had adopted a resolution that it would not provide permits for more than one residence per

original lot. The court then noted that, in July 1997, Sadler "began seeking something other than equitable relief." The court based this finding on evidence that, after it became clear that the Creekmurs were abandoning their efforts to subdivide their lot, Sadler campaigned against vacating the Sandy Ridge plats, as demonstrated by a letter she sent to the Knox County State's Attorney to voice her concern that vacating the plat would prejudice her litigation position. The court noted that, on August 20, 1997, Sadler's attorney spoke against vacating the plat before the County Board's executive land use committee. The court determined that all litigation by Sadler after this point lacked any objectively reasonable basis because Sadler had achieved everything she originally sought.

The parties submitted briefs to the court on the amount of reasonable attorney fees. The court imposed upon Sadler the sanction of paying all attorney fees that the Association, its individual board members, and attorney Massie incurred after August 20, 1997. Specifically, the court awarded sanctions against Sadler and in favor of the Association and the Board in the amount of $97,854. The court awarded sanctions to Massie in the amount of $44,990.19. In addition, the court denied Sadler's motion for sanctions against defendants. Although defendants argued that the court should also sanction Sadler's attorney, Barney Olson II, the court declined to do so, finding that Olson's actions were not sanctionable.

After carefully reviewing the record, we conclude that the trial court abused its discretion by sanctioning Sadler. Sadler's original petition for declaratory and injunctive relief named the Association as a defendant but did not seek any relief as to the Association. Consequently, the court dismissed Sadler's claims against the Association, without prejudice. Next, on August 28, 1997, Sadler filed her first amended petition, in which she alleged breach of contract and breach of fiduciary duty claims against the Association and the Board. Apparently, because the amended petition was filed without leave of court, the court treated it as a "Proposed First Amended Petition" for purposes of the parties' pending motions to dismiss. On January 6, 1998, the trial court entered an order which, *inter alia*, dismissed with prejudice Sadler's claims against the Association for declaratory and injunctive relief, because the first amended petition did not seek such relief against the Association. The court granted Sadler leave to amend her petition to add additional defendants, provided that the amendment did not seek declaratory or injunctive relief against the Association or the Board.

On March 3, 1998, Sadler filed her second amended complaint. Count III of the second amended complaint alleged that the Associa-

tion and the Board breached their obligations to enforce the restrictive covenant. Count IV asserted that the Association and the Board breached their fiduciary duties to the property owners by failing to enforce the restrictive covenant. Sadler sought compensatory damages in count III and compensatory and punitive damages in count IV.

In awarding sanctions, the court found that Sadler had achieved all of the results she originally sought by August 20, 1997; hence, all proceedings after that date lacked a reasonable legal basis. In our view, no reasonable person could agree with this conclusion.

While one of Sadler's objectives in bringing suit was to prevent the Creekmurs from building another house on their lot, she also consistently sought to obtain a ruling on the meaning of the restrictive covenant which ruling would be binding on the Association. This is evident from the pleadings and motions Sadler filed from the case's inception. She named the Association as a party to the original petition. In response to the Association's motion to dismiss that petition, Sadler asserted that the Association was a proper party to her lawsuit because of its duty to enforce the covenants and so that "any declaratory relief will be binding on Oak Run." Later, Sadler's claims for declaratory and injunctive relief evolved, with the court's permission, into requests for money damages. All of these claims, however, had as their foundation the assertion that the Association had failed to enforce the covenants. The court did not rule on the meaning of the restrictive covenant until August 18, 1998, well after Sadler filed her second amended complaint. Therefore, we fail to see how Sadler's objectives with respect to the Association and the Board could have been achieved as of August 20, 1997.

Moreover, the trial court allowed Sadler to amend her pleadings against the Association and the Board from claims for declaratory and injunctive relief to claims for money damages. As early as the time that the court granted Sadler leave to file her second amended complaint, the events that gave rise to the mootness arguments had already occurred and had already been raised by the defendants in motions to dismiss. Thus, the court was aware of these arguments but, nonetheless, allowed Sadler to bring new claims against the Association, the Board, and additional defendants. In filing her second amended complaint, Sadler followed the court's directive not to assert claims for declaratory and injunctive relief against the Association and the Board. In our view, it was unfair and unreasonable for the court to permit Sadler to amend her pleadings and then sanction her for doing so. If Sadler's entire cause of action was moot after August 20, 1997, the court should not have allowed her to file her amended pleadings.

In so holding, we do not shift the initial burden of determining

whether a plaintiff's claims are warranted by existing law from the plaintiff's attorney to the court. An attorney is obligated not to file a frivolous complaint. In this case, we hold that, while Sadler's claims may not have been artfully pleaded, and while she was ultimately unsuccessful on those claims, they were not frivolous.

As stated, the trial court awarded sanctions to the Association, the Board, and Massie based on its ruling that Sadler lacked a reasonable basis for filing the second amended complaint because, by August 1997, she had achieved all of the results she had originally sought. As we have concluded that Sadler did in fact have a reasonable basis for filing the complaint, we must reverse the sanctions awarded to all three parties. While the trial court had granted Massie's motion to dismiss the second amended complaint on the ground that he owed no duty to Sadler, the trial court did not specify that it was granting sanctions to him on this basis, and as discussed, we may affirm the imposition of sanctions only on the grounds specified by the trial court. See *Miller*, 51 Ill. 2d at 78; *Smith*, 299 Ill. App. 3d at 1052.

Based on our reversal of sanctions against Sadler, and the fact that Massie has not appealed the denial of sanctions against Olson, we do not reach the issue of whether Olson should have been sanctioned. We also need not address Sadler's remaining arguments regarding sanctions.

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Knox County.

Affirmed in part and reversed in part.

GILLERAN JOHNSON, J., concurs.

PRESIDING JUSTICE O'MALLEY, dissenting:

I respectfully dissent. I believe plaintiff was entitled to a declaration that a second home could not be built on the lot in question.

The majority states that the issue of building a second home on the lot is moot because the Creekmurs stated that they no longer intended to build an additional residence, they had filed a petition to vacate the plat of the subdivision, they had terminated their contract for the sale of the land, their Association building permit was suspended, and they had no sanitary permit. I disagree.

While a reviewing court will not hear a case merely to decide moot or abstract issues, mere voluntary cessation of allegedly unlawful conduct cannot moot a case, as a defendant would then be free to

resume the practices complained of. *Fryzel v. Chicago Title & Trust Co.*, 173 Ill. App. 3d 788, 794 (1988); see 354 Ill. App. 3d at 1040, citing *Beretta U.S.A. Corp.*, 337 Ill. App. 3d at 22. The only instance in which voluntary cessation can moot a case is where it is absolutely clear that the wrongful behavior could not reasonably be expected to recur. *Fryzel*, 173 Ill. App. 3d at 794.

The facts here do not go so far as to indicate even voluntary cessation; the Association has merely *suspended* the Creekmurs' permit to build a second home. Absent a declaration, the history of this case shows that they remain able to pursue building two homes on their lot (or selling the lot for the purpose of placing two homes upon it) at any time they choose.

Because the County building permit has not been revoked or suspended, the only obstacles to the Creekmurs renewing their goal of building two homes on the lot are the suspended Association building permit and the lack of a sanitary permit. As discussed below, neither is a significant obstacle, and it is far from absolutely clear that the complained-of actions could not reasonably be expected to recur.

Regarding the first obstacle, the suspended Association building permit, there is nothing preventing the Association from lifting the suspension. The Creekmurs' permit was never rescinded, but merely suspended. The Association has stated only that it will not allow building permits *prospectively*; it has not declared that it would not go forward with permits already issued in contravention of the restrictive covenants. Therefore, the Association has not committed to rescinding the Creekmurs' permit. I also note that the Association has already once issued the Creekmurs a permit while fully aware of their plans to build a second home against the limitations of the restrictive covenants, and it has given no indication that it would not do so again by lifting the current suspension.

Regarding the second obstacle, the lack of a sanitary permit has not proven a significant obstacle in the past to the Creekmurs' violation of the restrictive covenants. In fact, the Association originally issued the Creekmurs a building permit for building a second home on their lot in spite of the fact that no sanitary permit had been obtained. The Association later suspended the permit, but, six weeks later, the Creekmurs were still able to reach an agreement with the Williamses to sell their lot as two separate parcels of land, each to contain a single-family home.

Nor am I persuaded by the facts that the Creekmurs have terminated their contract for the sale of the land and that they have disavowed their intention to build a second home. The Creekmurs claim to have no interest in building a second home now, but, absent a

court declaration, there is nothing to say that they could not later, as they have done in the past, attempt to sell their property as two parcels of land for two houses.

There are no real obstacles preventing the Creekmurs from again attempting to build two homes on their lot. Given what transpired in this case and the fact that on more than one other occasion the Association has allowed additional homes to be built on original lots, and given the Association's current posture that it is only suspending rather than rescinding the Creekmurs' permit, it is a far cry from absolutely clear that the complained-of activity could not reasonably be expected to recur. As such, I do not believe the issue is moot. I would hold that plaintiff is entitled to a declaration that attempts to build a second home on the lot run afoul of the restrictive covenants.