No. 3--07--0568

_____

Filed June 18, 2008

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| In re Y.A., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of | ) | |
| Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 06--JA--306 |
| | ) | |
| v. | ) | |
| | ) | |
| P.A., | ) | Honorable |
| | ) | Albert L. Purham, Jr., |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the Opinion of the court:
_____

The trial court adjudicated the one year old minor, Y.A. neglected because he lived in an environment injurious to his welfare. 705 ILCS 405/2--3 (West 2006). At the dispositional hearing, the trial court found the respondent, P.A., fit but made the minor a ward of the court and named the Department of Children and Family Services (DCFS) as guardian with the right to place. The respondent appeals, arguing that the trial court (1) abused its discretion by placing the minor outside his home; and (2) erred in denying his motion for sanctions. We affirm.

FACTS

On December 27, 2006, the State filed a petition alleging that the minor was neglected. 705 ILCS 405/2--3 (West 2006). The petition alleged the minor was neglected because: (1) his mother and father, the respondent, were previously found unfit in prior juvenile proceedings and there was not a subsequent finding of fitness in those proceedings; and (2) the minor's mother and the respondent had not completed services that would have resulted in the return home of the minors involved in those prior juvenile proceedings. On that same date, the trial court entered an order for temporary shelter care and placed the minor in the custody of DCFS based on the allegations in the petition. The respondent did not appear at the shelter care hearing.

On January 3, 2007, the minor's mother stipulated to the allegations in the petition. On January 17, the respondent stipulated to the allegations concerning the minor's mother but denied the allegations concerning himself. On March 30, the State notified the respondent that a significant error had been made in the neglect petition. The State had improperly stated in the petition that the respondent had been found unfit in the prior juvenile proceedings when, in fact, he had been found fit but reserved. The State indicated that it would amend the petition at the next hearing. On April 17, the State made an oral motion to amend the petition, which the trial court granted.

On May 16, 2007, the respondent filed a motion for sanctions

pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137) against the signatories of the original neglect petition--Michael Mettel, a DCFS investigator, and Janine Mallicoat, a paralegal for the State. The motion alleged that the signatories filed a false pleading in that they misrepresented the respondent's fitness in prior juvenile proceedings.

On June 19, 2007, the trial court held a hearing on the respondent's motion for sanctions. Mettel testified that he had been a DCFS investigator for 14 years. He stated that he initiated the neglect petition in this case. He sent the State a petition, seeking shelter care for the minor, based on the prior finding of unfitness against the minor's mother. The State then returned the petition to him with the additional allegations against the respondent. Mettel read and signed the petition, believing that the State had added accurate allegations. Mettel testified that it was not unusual for the State to add allegations to a petition after it conducted its own investigation. Mettel stated that he could have asked the State or a DCFS liaison to confirm the truth of the new allegations.

The trial court denied the motion because Mettel's conduct did not warrant sanctions under Supreme Court Rule 137. The trial court also set a hearing on the respondent's motion to vacate the shelter care order for June 26, 2007.

On June 26, 2007, the trial court ordered that the motion to

3

vacate the shelter care order be heard before the judge who originally heard the matter. The record does not contain further information about the resolution of the motion.

On July 3, 2007, the trial court held an adjudication hearing. In addition to the stipulations of the minor's mother as to the allegations in the petition, the State presented evidence that the minor's mother and the respondent lived together as recently as June 19, 2007. The respondent presented no evidence. The trial court found that the minor was neglected because the minor's mother had been found unfit in prior juvenile proceedings and because the respondent continued to live with her.

Lutheran Social Services (LSS) filed a dispositional hearing report on July 31, 2007. The report indicated that the respondent lived with the minor's mother in a house that appeared to meet the needs of the family. The respondent worked various odd jobs. He told LSS that he recently started a new job, but he did not send LSS any verification of employment. The report also indicated that visits between the minor and his mother had been suspended because the mother said that she would give her children pills to kill them rather than see them in someone else's home.

On July 31, 2007, the trial court held a dispositional hearing. Danielle Norman, an LSS caseworker, testified that the respondent and the minor's mother continue to reside together. She stated that the respondent did not visit with the minor for about

4

a month but that they resumed visitation recently. Respondent's interactions with the minor were appropriate during visitation.

The minor's mother testified that she did not make any comment about killing her children. She also stated that she would abide by any restrictions on contact with the minor, including living in another home, if the minor were returned to the respondent.

The respondent testified that he wanted the minor to live with him. He stated that he would send the minor to day care while he worked, but he had not arranged for any day care services. He noted that he had a bedroom for the minor, but he stated that he needed to buy a crib for him. The respondent also testified that he started a new job and that he had two other jobs in the past few months.

The trial court found that the minor's mother remained unfit and that the respondent was fit. The trial court made the minor a ward of the court and named DCFS as guardian with the right to place. The trial court believed that placement was necessary because the respondent: (1) had been evasive, if not dishonest, about his employment; (2) was not prepared for the child as he had not bought a crib or arranged for day care; and (3) had no contact with the minor for a month until just before the dispositional hearing. Finally, the trial court stated that it was not confident that the respondent would live apart from the mother and protect

5

the minor from her, as she remained unfit.

The respondent appeals.

ANALYSIS

On appeal, the respondent first argues that the trial court abused its discretion when it placed the minor outside his home.

Under section 2--27(1) of the Juvenile Court Act of 1987, the trial court may commit a minor to DCFS wardship if the trial court determines that the parents are "unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents."  705 ILCS 405/2--27(1) (West 2006).  Generally, both parents must be adjudged unfit, unable, or unwilling before placement with DCFS is authorized because biological parents have a superior right to custody.  In re Ryan B., 367 Ill. App. 3d 517, 855 N.E.2d 272 (2006).  However, the best interests of the child are superior to all other factors, even the interests of the biological parents.  In re J.J., 327 Ill. App. 3d 70, 761 N.E.2d 1249 (2001).  On review, we will not reverse the trial court's determination unless it abused its discretion by selecting an inappropriate dispositional order.  April C., 326 Ill. App. 3d 245, 760 N.E.2d 101 (2001).

The respondent argues that the trial court abused its

6

discretion by placing the minor outside his home because he was fit and, therefore, he had a superior right to custody of the minor. Although it is true that the respondent was fit, the purpose of the dispositional hearing was for the trial court to determine whether it was in the best interests of the child to be made a ward of the court. In re Edward T., 343 Ill. App. 3d 778, 799 N.E.2d 304 (2003). As such, the trial court could consider any evidence presented at the hearing, including the respondent's living arrangements. Edward T., 343 Ill. App. 3d 778, 799 N.E.2d 304.

In the present case, the trial court was concerned about the fact that the respondent was living with the minor's mother because she had been found unfit and had threatened to kill the children if they were placed in someone else's home. The trial court questioned whether the respondent would actually live apart from the mother and protect the minor from her. Furthermore, the evidence showed that the respondent was not prepared to take custody of the minor. He stopped visiting the minor for about a month right before the dispositional hearing, and he had not bought a crib or arranged for day care for the minor. Thus, we find that the trial court did not abuse its discretion in placing the minor outside the respondent's home.

The respondent also argues that the trial court erred in denying his motion for sanctions. The respondent requests that we remand this cause to the trial court to impose sanctions against

7

Mettel, DCFS, and the Peoria County State's Attorney's office. In the alternative, the respondent requests that we enter whatever order the circumstances demand, including, but not limited to, vacating the shelter care order.

Supreme Court Rule 137 provides, in part:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." 155 Ill. 2d R. 137.

The purpose of the rule is to prevent the filing of false or frivolous lawsuits. Sadler v. Creekmur, 354 Ill. App. 3d 1029, 821 N.E.2d 340 (2004). It is designed to prohibit the abuse of the judicial process by parties who make claims based on unsupported allegations of fact or law. Senese v. Climatemp, Inc., 289 Ill. App. 3d 570, 682 N.E.2d 266 (1997). We review a trial court's decision on a motion for sanctions for an abuse of discretion. Sadler, 354 Ill. App. 3d 1029, 821 N.E.2d 340.

The respondent argues that the trial court should have imposed

8

sanctions because Mettel signed the original neglect petition that contained false allegations against the respondent without conducting an investigation as to the truth of the allegations. Although the respondent is correct about the falsity of the allegations, the State amended the petition as soon as it discovered the errors and prior to any adjudication in this case. Also, we note that the petition was not wholly false, as it contained accurate allegations against the minor's mother, and that Mettel signed the petition, believing the State had added accurate allegations. It was not unusual for the State to add allegations, and it would be almost useless for Mettel to ask the State to confirm whether the allegations were accurate as it was the party that investigated and added them.

The respondent also argues that he was prejudiced by the false allegations in the petition as the trial court relied on the original petition in granting the shelter care order and removing the minor from his custody. We find that the respondent was not prejudiced as he had the opportunity to vacate the shelter care order after the mistake was corrected, and, according to the record, he attempted to do so. Accordingly, the trial court did not abuse its discretion in denying the respondent's motion for sanctions.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court

9

of Peoria County is affirmed.

Affirmed.

CARTER and HOLDRIDGE, JJ., concurring.